(No. 35141.—

THE PEOPLE *ex rel.* Charles F. Carpentier, Secretary of State, Appellant, *vs.* DANIEL HAMM DRAYAGE COMPANY, Appellee.

*Opinion filed September 24, 1959.*

LATHAM CASTLE, Attorney General, of Springfield, (WILLIAM C. WINES, RAYMOND S. SARNOW, A. ZOLA GROVES, and BURTON BERKLEY, Assistant Attorneys General, of counsel,) for appellant.

DRACH AND TERRELL, of Springfield, for appellee.

Mr. JUSTICE KLINGBIEL delivered the opinion of the court:

On the relation of the Secretary of State this action was brought in the circuit court of Sangamon County to collect license fees for 31 motor trucks owned by defendant Daniel Hamm Drayage Company, a Missouri corporation. At the conclusion of the trial, defendant was held liable for fees upon 12 of the vehicles and not liable for fees with the respect to the remaining ones. Plaintiff appeals, complaining of that portion of the judgment which

denied recovery; and defendant has prosecuted a cross appeal, contending that the court erred in holding it liable for fees on the 12 vehicles. The case comes directly to this court for review, since the revenue is involved.

The essential facts are not in dispute. In the latter part of January, 1952, defendant applied for Illinois license plates for 31 of its vehicles. To a question on the application form whether the vehicle was operated interstate or intrastate, the defendant answered "both." It is contended that the 19 vehicles with respect to which the trial court held defendant not liable were not operated or driven in Illinois during the year in question, and that the remaining 12 were operated here only in interstate commerce. Under a reciprocity agreement between Illinois and Missouri, no fees are due to Illinois on account of Missouri vehicles operating here in interstate commerce.

Plaintiff's position is based upon the argument that "in applying for license plates" defendant received the privilege of using the highways; and that the fees are payable for the privilege as such, regardless of whether it was exercised during the year. We do not agree with the plaintiff that the mere making of an application is all that is necessary to obtain the privilege. But the evidence shows that the applications were accepted and plates were issued. Defendant thereupon became entitled to the intrastate use of Illinois highways with each of the trucks so licensed, and if the applications were voluntarily made the fact that defendant did not avail itself of such use cannot relieve it of the obligation to pay for the benefit received. *Bode* v. *Barrett,* 412 Ill. 204, 226.

It appears, however, that in 1951 numerous arrests had been made of defendant's truckers traveling in interstate commerce; and that in December of that year, when its general manager went to Springfield seeking information, he was told by representatives of the Secretary of State's office that trucks bearing Missouri "local" plates did not qualify

for reciprocity and would need Illinois plates, even though engaged only in interstate commerce. After being informed that arrests would be made unless Illinois licenses were obtained, defendant made the applications.

It is not disputed that under the reciprocal agreements between Illinois and Missouri, Illinois did not impose licensing fees with respect to trucks in interstate commerce bearing the Missouri plates. Had defendant made no application, nothing would be due to Illinois for the use actually made by defendant of the highways during 1952. The questions are whether, by applying for and receiving plates under the circumstances shown here, defendant waived its right to conduct interstate operations without any payment to Illinois; and whether by indicating on the application both interstate and intrastate use, defendant bound itself to pay fees on all 31 vehicles for the unexercised privilege of use in intrastate commerce here.

With respect to the latter question the plaintiff urges that whatever duress may have been responsible for making the applications as such, the particular information given was not coerced. Defendant answers by pointing to the fact that each of the vehicles in question was operated in intrastate commerce *in Missouri,* as well as in interstate commerce, and to the ambiguous form of question on the application blank. After the question "Is this vehicle operated for hire" appeared the question "Interstate or intrastate?" Then followed the question "If interstate, have the Federal motor carrier requirements been met?" It is argued, with much plausibility, that the bare question "Interstate or intrastate?" leaves uncertain the precise meaning intended by the word "intrastate." Since it may mean either intrastate in Illinois or intrastate in Missouri (or whatever the home State of the applicant might be), it is entirely understandable that he might infer the latter. At least he would be led to wonder, "intra-what-State?" If the Secretary's office wish to eliminate this possible confusion

it could easily have specified "intrastate in Illinois." Under the circumstances here we can not accept the plaintiff's contention that defendant bound itself to pay fees for a privilege, entirely unused in fact, which would not otherwise require a license.

The question remains whether the acceptance of defendant's applications obligated it to pay for a privilege which it already had, to-wit: the conduct of interstate operations. This question must be considered in the light of defendant's evidence, substantially undenied, that the applications were made to avoid arrest of its drivers and the consequent disruption of its business. In *People ex rel. Morgan Trucking Co.* 16 Ill.2d 313, where an almost identical situation was presented, this court held that the act of applying for Illinois licenses was entirely involuntary and that the applicant was not estopped from asserting its rights under reciprocity provisions. *People ex rel. Carpentier* v. *Treloar Trucking Co.* 13 Ill.2d 596, relied upon by defendant, involved fees based upon classification of vehicles, rather than upon classification of use, but we think the rule announced there is equally applicable in the case at bar. In the *Treloar case* representatives of the Secretary of State's office, as the alternative of imposing statutory penalties, demanded that the company apply for a different weight classification, entailing higher fees than the law required for the vehicles in question. After payment had been made of the fees for the proper weight classification the company was sued for the difference. In deciding that nothing more was owed, this court, after outlining a predicament similar to that in the case at bar, observed: "The defendant thereupon was confronted with a situation where it had to make one of two choices. It could refuse to prepare and file with the Secretary of State, as demanded by him, an application for truck license in the classification of 24,000 to 41,000 pounds, and thus suffer severe statutory penalties and disastrous effect of its busi-

ness, or it could prepare and have filed the applications as demanded by the Secretary of State. It chose the latter course. * * * economic necessity demanded if he was to carry on his business, that he do so. It is also clear that he had to do so in order to avoid statutory penalties. Therefore, the filing of the application by the defendant and the payment thereunder was made under duress and compulsion and was not voluntary."

It is true, as plaintiff urges, that defendant chose (under, it is said, "a mistake of law") to make the applications. But as this court pointed out in *Chicago and Eastern Illinois Railway Co. v. Miller,* 309 Ill. 257, "Conduct under duress always involves a choice." Acts performed by a person under duress or compulsion are not to be attributed to his will. They are, in the eyes of the law, the results of another's will, for which the actor should not be held responsible. The defendant in this case could doubtless have refused to file the applications. It could have chosen to pursue affirmative forms of relief instead of resisting the present proceeding. But in the interim, however short it might be, defendant's operations would be unlawfully handicapped. To require businessmen, at the expense of liability for illegal license fees, to refuse compliance with excessive demands by administrative officials, and to obtain injunctive or other more time-consuming forms of relief before disruptions of business can be avoided, is not only to ignore the necessities and realities of commercial activity but to condone the exaction of a price for exercising rights. This we cannot do.

Plaintiff's argument that the applications must have been made under "formal protest" before liability for illegal fees can be avoided is likewise without merit. This is not an action by the licensee to recover back excessive payments. The rule requiring protest is not to be extended to suits in which liability is sought to be imposed. Nor do we think protest would have been necessary even if payment

thereof had been made. *People ex rel. Carpentier* v. *Treloar Trucking Co.* 13 Ill.2d 596, 601.

The circuit court was correct in denying recovery of fees upon the vehicles not operated in Illinois. It erred in holding defendant liable for fees upon the vehicles driven here in interstate commerce. Its judgment is reversed and the cause is remanded with directions to enter judgment for defendant as to the entire amount claimed.

*Reversed and remanded, with directions.*