KEWANEE PRODUCTION CREDIT ASSOCIATION, Plaintiff-Appellee, v. G. LARSON & SONS FARMS, INC., a/k/a George Larson & Sons Farms, Inc., Defendant-Appellant.

Third District   No. 3—85—0758

Opinion filed August 7, 1986.

Robert J. Noe and Richard J. Trinrud, both of Bozeman, Neighbour, Patton & Noe, of Moline, for appellant.

Reynolds M. Everett, Jr., and Keith A. Luymes, both of Everett & Young, P.C., of Galva, for appellee.

JUSTICE BARRY delivered the opinion of the court:

It appears that G. Larson & Sons Farms, Inc. (Larson), a family-owned farming corporation, executed various promissory notes in favor of the Kewanee Protection Credit Association (PCA) for loans which were secured by various farm assets, including the corporation's crops, livestock, stored grain and feed, and certain farming equipment. By November 1981, Larson was in default on its loans.

On November 16, 1981, plaintiff, PCA, obtained judgment by confession against defendant, Larson, in the amount of $389,043.77 plus $40,000 in attorney fees. Larson filed a timely "Motion to Open Judgment by Confession" in the circuit court of Henry County, together with an answer to the plaintiff's complaint and a "Petition for Temporary Restraining Order and Injunction." The TRO was granted pending a hearing on the motion to open judgment.

When PCA obtained its judgment by confession, Larson's crops were still standing in the fields. Larson had exhausted its finances and was searching for another lending agency to refinance its obligations to the PCA and proceed with farming operations. Larson entered into a liquidation agreement with PCA to permit the PCA to

harvest Larson's crops beginning on November 19. However, because the soil was wet, Larson became concerned that the PCA's harvesting would cause extensive damage to the land which was to be pledged as security for refinancing its loans. Consequently, Larson petitioned the court for a TRO while it proceeded with negotiations for refinancing with a Minnesota-based firm, ITT Thorpe. Although Larson claimed that its fields already had been damaged by PCA's efforts to harvest in November, Larson did not immediately attempt to recover from PCA for the damages on the belief that the extent of damage to its land could not be determined at the time the confession judgment was being litigated. (It appears that a suit to recover for such damages was subsequently filed by Larson.) At the time of the proposed closing with ITT Thorpe at the circuit courthouse, Larson's attack on the confessed judgment was directed solely to the reasonableness of attorney fees.

The date set for Larson's closing of the loan agreement with ITT Thorpe was December 23, 1981. By stipulation of the parties, a hearing on defendant's motion to open judgment had previously been scheduled to be heard on December 30, 1981. On December 21, 1981, defendant petitioned the court for an order directing plaintiff to issue a release of its judgment upon defendant's payment of $389,043.77 and defendant's depositing of $40,000 in escrow pending resolution of the issue of attorney fees. The petition was set down for a hearing on December 23 to coincide with the loan closing.

ITT Thorpe's attorney from Wisconsin appeared on that date at the Henry County courthouse, as did representatives of the money-brokerage firm, Credit Pac, that had directed Larson to ITT Thorpe. The Larson family appeared with counsel, as did representatives of the PCA and their attorney. Attorney Kurt Horbert also attended for the purpose of assisting the Larsons in resolving their disputes over attorney fees.

The Larsons' dilemma was discussed in the chambers of Judge Conway Spanton. The Larsons were faced with three options. They could: (1) insist on a full hearing on the motion to open judgment, which was scheduled to be heard on December 30; (2) agree to pay the principal and interest pursuant to the judgment, forego any claim for damages to its land, and place $40,000 in escrow pending a hearing on the reasonableness of the fees; or (3) pay off the PCA in full in exchange for a release in satisfaction of the judgment. The PCA would not agree to release Larson from the judgment while litigation arising out of the underlying debt continued. Moreover, the court made it clear to the Larsons that any claim for damages caused to the

farmland by PCA's attempt to harvest was not a collateral matter, but would be disposed of in the current proceedings on the confessed judgment. ITT Thorpe, of course, was unwilling to close on the refinancing agreement without a release in satisfaction of PCA's judgment. The Larsons believed that their loan negotiations with ITT Thorpe would be jeopardized if they suggested postponing the closing to a later date.

Ultimately, after hours of discussion, defendants, Larsons, elected to proceed with the third option, contrary to the advice of their attorneys. Larson closed the refinancing deal with ITT Thorpe, paid the total claimed, $429,043.77, to the PCA and received PCA's release on the confession of judgment. The Larsons acknowledged the corporate decision in open court and the fact that the corporation was proceeding contrary to its lawyers' advice. Upon receipt of PCA's release, the court, on its own motion, entered an order vacating judgment and dismissing the cause of action.

On January 22, 1982, defendant filed a motion to vacate the order of dismissal pursuant to former section 68.3 of the Code of Civil Procedure (Ill. Rev. Stat. 1981, ch. 110, par. 68.3 (now Ill. Rev. Stat. 1985, ch. 110, par. 2—1203). The motion was not heard until October 28, 1985.

Larson, through its attorney, argued that the 1981 suit should be reopened because its decision to forego a hearing on the reasonableness of the $40,000 in attorney fees was the product of economic duress. After hearing the testimony of attorneys Keith Luymer and James Nash, who represented PCA and Larson, respectively, on December 23, 1981, and Dennis Larson, vice-president of Larson, the court denied defendant's motion to vacate.

In this appeal, Larson contends that it is entitled to a hearing on the reasonableness of the attorney fees as a matter of law and that the trial court erred in concluding that defendant's evidence did not prove a *prima facie* case of economic duress. We initially consider whether the trial court abused its discretion in denying defendant's motion to vacate. *Abbey Plumbing & Heating, Inc. v. Brown* (1977), 47 Ill. App. 3d 719, 365 N.E.2d 115.

■ The elements of economic duress are twofold—"(1) a wrongful act and (2) the absence of the quality of mind essential to the making of a contract." *Alexander v. Standard Oil Co.* (1981), 97 Ill. App. 3d 809, 815, 423 N.E.2d 578, 584.

> "[T]he term 'wrongful' is not limited to acts that are criminal, tortious, or in violation of contractual duty, but extends to acts that are wrongful in a moral sense as well. [Citation.] In terms

of 'economic duress,' also known as 'business compulsion,' the defense of duress cannot be predicated upon a demand which is lawful or upon doing or threatening to do that which a party has a legal right to do. [Citation.] Furthermore, duress does not exist where consent to an agreement is secured because of hard bargaining positions or the pressure of financial circumstances. Rather, the conduct of the party obtaining the advantage must be shown to be tainted with some degree of fraud or wrongdoing in order to have an agreement invalidated on the basis of duress. [Citation.] The distinction was explained in *Chouinard v. Chouinard* (5th Cir. 1978), 568 F.2d 430, 434:

'A contract is voidable where undue or unjust advantage has been taken of a person's economic necessity or distress to coerce him into making the agreement. However, a duress claim of this nature must be based on the acts or conduct of the opposite party and not merely on the necessities of the purported victim. Thus, the mere fact that a person enters into a contract as a result of the pressure of business circumstances, financial embarrassment, or economic necessity is not sufficient. Unless wrongful or unlawful pressure is applied, there is no business compulsion or economic duress, and such a claim cannot be predicated on a demand which is lawful or on the insistence of a legal right.' " 97 Ill. App. 3d 809, 815, 423 N.E.2d 578, 582-83.

Here, as in *Alexander*, defendant's evidence demonstrates a significant disparity in the parties' bargaining positions, but falls short of showing that plaintiff's use of its superior economic position was in any respect "wrongful." The testimony introduced at the hearing on defendant's motion to vacate fails to confirm Larson's belief that ITT Thorpe would necessarily have backed out of the bailout plan if the closing had been postponed, or that the corporation and the Larson family could not have survived at least another week on what was left of their resources. There was nothing morally or legally wrongful in PCA's insistence that defendant either litigate its dispute or pay off the lender and waive its right to a further hearing before PCA would release Larson from the confessed judgment.

Further, the fact that Larson elected the option of paying its confessed judgment in full contrary to the express advice of its counsel does not, *ipso facto,* establish that George Larson, Larson's president, was acting so erratically on December 23, 1981, as to now be entitled to avoid or rescind Larson's express waiver of its right to a further hearing on the reasonableness of the $40,000 in attorney fees included

in the confessed judgment. The inadvisability of Larson's decision to forego its legal rights on December 23, 1981, was a matter addressed in open court by Larson's counsel. The legal consequences of each option were fully disclosed to the Larson family and acknowledged by them on behalf of the corporation in court. The court was in a position at that time to take notice of the stressful situation and its effects on the mental and emotional well-being of the Larsons. The matters presented upon Larson's motion to vacate did not constitute new evidence.

It is clear from the record on appeal that the options open to Larson on that date were extensively discussed among the Larson family members and weighed by them during the course of the day. In hindsight, Larson apparently could have used better judgment in selecting among the available options. We cannot say, however, that the testimony proved that the Larsons' wills were overborne by the situation they faced that day.

We must conclude that the evidence presented in support of Larson's motion to vacate failed to establish a *prima facie* showing of either of the two elements for a claim of economic duress. On these facts, we cannot say that the trial court's denial of the motion to vacate constitutes an abuse of discretion.

■ Having so decided, we must reject as well defendant's argument in the alternative that the court erred as a matter of law in granting attorney fees in the amount of $40,000 without receiving evidence of reasonableness. PCA's complaint for judgment by confession sought attorney fees in the amount of $40,000. That amount was, as aforesaid, approved by the trial court in granting judgment for the PCA on November 16, 1981. Defendant was entitled to a hearing on the reasonableness of the fee award. (*Lyons Brothers Lumber & Fuel Co. v. Shepherd* (1980), 81 Ill. App. 3d 213, 400 N.E.2d 975.) It is a matter of record that defendant knew of its legal right to such hearing. On December 23, 1981, the Larsons expressly waived in open court the corporation's right to the hearing it now seeks. Having waived a known right, defendant may not now attempt to revoke its waiver and revive its rights. *Elmore Real Estate Improvement Co. v. Olson* (1947), 332 Ill. App. 475, 76 N.E.2d 204.

For these reasons, we affirm the order of the circuit court of Henry County.

Affirmed.

SCOTT, P.J., and STOUDER, J., concur.