CLANCE DE FONTAINE, Plaintiff-Appellee and Cross-Appellant, v. JOSEPH C. PASSALINO *et al.*, Defendants-Appellants and Cross-Appellees.

Second District   No. 2—90—1279

Opinion filed December 24, 1991.—Rehearing denied January 22, 1992.

Neil S. Ament and Gilbert W. Gordon, both of Marks, Marks & Kaplan, Ltd., of Chicago (Robert Marks, of counsel), for appellants.

Kuseski, Flanigan & Associates, of Waukegan, and Beermann, Swerdlove, Woloshin & Barezky, of Chicago (Alvin R. Becker, of counsel), for appellee.

JUSTICE NICKELS delivered the opinion of the court:

This appeal arises from an accounting action filed by plaintiff, Clance De Fontaine, against defendant, Joseph Passalino (defendant) and Lake Forest Chateau, Inc. (Chateau), as a nominal defendant. The circuit court of Lake County made certain findings and ordered an accounting in an order filed on December 11, 1987. It subsequently amended that order for clarification reasons in another order filed February 10, 1988. Following an accounting proceeding, a judgment was entered on August 8, 1990, for $658,908.66 compensatory damages in favor of plaintiff for the use and benefit of Chateau and against defendant. Defendant was also assessed $20,000 in punitive damages. A subsequent order provided that plaintiff be reimbursed for attorney fees and costs under a "common-fund theory." Both parties' petitions for attorney fees were denied. (134 Ill. 2d R. 137.) Defendant appealed, and plaintiff filed a cross-appeal. Several issues are raised with respect to these orders.

Plaintiff filed a complaint for an injunction and other relief (accounting) against defendant and Chateau on July 30, 1985. It was alleged that defendant was a 70% shareholder, officer and director of Chateau and plaintiff was a 30% shareholder. Plaintiff claimed that defendant defrauded plaintiff, breached their agreement, and breached fiduciary duties. It was alleged that defendant diverted Chateau funds for his own use and refused to allow plaintiff access to Chateau's books and records.

Defendant initially denied diverting any funds to his own use in his answer. He filed a counterclaim. It was defendant's contention that plaintiff breached their agreement when plaintiff failed to pay $1 million of a $1.25 million equity or capital contribution. He claimed that plaintiff's share in the corporation was reduced to 6% due to his failure to pay the full amount.

During the trial on plaintiff's complaint, the evidence showed that plaintiff and defendant entered into an oral agreement in 1981 for the construction of a townhouse development in Lake Forest, Illinois, known as Lake Forest Chateau. Defendant was involved in the construction industry in the area. Plaintiff was a member of the Chicago Board of Trade and engaged in the trading of commodities. After entering into the joint venture agreement, the parties formed a corporation, which they then designated as a subchapter S corporation under the Internal Revenue Code. Defendant owned 70% of the shares and was the president, while plaintiff owned 30% and was the secretary-treasurer.

According to plaintiff he met with defendant in the fall of 1981 to discuss the joint venture. Defendant was the contract purchaser for 10½ acres of property in Lake Forest owned by the DeMaries. The sale price was $530,000 with a $180,000 credit toward the purchase of a townhouse for the DeMaries. The development would consist of 36 townhouses or units to be built in phases of six units. After selling the first six units, plaintiff would receive one-half of his investment back and the other one-half of his contribution after the next six units were sold. The project would be self-sustaining out of the profits of each unit and no bank financing would be necessary.

Defendant was carrying over $800,000 in debt, and interest rates were very high. He needed an investor but had been unable to locate one. It was eventually agreed that plaintiff would make a capital contribution of about $1.2 million. However, plaintiff explained that the exact dollar amount was not set during the meeting. Plaintiff admitted that $1.25 million could have been the amount. Defendant testified that the amount to be contributed by plaintiff was $1.25 million. Defendant was to receive 20% more than plaintiff as his share of the profits for his management services and his long involvement with the project over prior years. Defendant testified that he was also to be paid 15% for his services in addition to his 70% share and before any profits were paid.

Plaintiff made a contribution of $200,000 in December 1981. According to plaintiff he suffered financial losses in the grain market soon thereafter which made it necessary to pull out of the parties' agreement. He still had other assets and was not financially ruined. He met with defendant in January 1982 to explain the situation. He felt badly over the position in which he put defendant. Plaintiff told defendant that he would provide $330,000 to complete the property purchase. Then defendant could sell the property, and defendant could retain any profit. Defendant misstates this testimony by claiming that plaintiff offered to split the profit. Plaintiff would absorb any loss. Plaintiff also told defendant that he could look for other investors while the property was being sold and go ahead with the project.

Defendant asked plaintiff to coguarantee a construction loan with defendant for $1.6 million. If plaintiff would coguarantee such a loan, plaintiff would no longer have to contribute the remaining part of his capital contribution. Plaintiff and defendant agreed to this modification according to plaintiff. Plaintiff later paid $50,000 to Chateau in March 1982 as capital contribution. The parties coguaranteed a construction loan for $1.6 million with Lyons Savings and Loan in June

1983 (Lyons loan), after other attempts to obtain financing. Lyons required a guarantee from both parties to obtain the funds.

Defendant testified as an adverse witness that plaintiff was to contribute $1.25 million and would act like a silent partner. Defendant would be in complete charge of the project. Plaintiff paid $200,000 in December 1981 but kept making excuses about paying more money. Plaintiff paid $50,000 in March 1982. After plaintiff paid this money, he told defendant that he had a lot of positions on the market in an attempt to make a large profit. Plaintiff could not pay defendant any more money because of these positions. Plaintiff never told defendant about reverses on the grain market.

Plaintiff, defendant and Ralph Peters testified about a meeting among them in the summer of 1982. Peters was a business associate of plaintiff. The meeting was initially for the purpose of securing Peters as an investor. Plaintiff and Peters testified that Peters did not invest and advised plaintiff to get out of the deal with defendant because it was a bad investment. Defendant testified that Peters told defendant that plaintiff had severe financial problems. Plaintiff's wife also advised defendant of plaintiff's poor financial condition according to defendant.

Prior to going to Lyons in 1983, defendant testified that he asked plaintiff for his $1 million contribution. Plaintiff could not pay it but wanted to stay involved in the project. He asked for more time to get the money. Defendant agreed to an 18-month extension for plaintiff to pay the $1 million balance. They would obtain a construction loan from Lyons for the interim which would be paid off when plaintiff had the money. The loan was then obtained by defendant and both parties coguaranteed it. Defendant testified that he repeatedly asked plaintiff for $1 million over the following months while plaintiff testified that defendant did not ask for the money.

Construction began in April 1983 with a townhouse. According to plaintiff he examined the books and records in September 1984 and saw numerous expenditures for matters not related to Chateau. Plaintiff and defendant discussed these expenses in November 1984, and defendant denied using the funds for his personal use. Plaintiff testified that defendant asked him for money in December 1984 to meet the interest account for the Lyons loan. Plaintiff had a problem with the books and would not pay any money until he got an accounting. Plaintiff testified that thereafter defendant refused an audit and would not allow plaintiff access to the records. Plaintiff filed his complaint on July 30, 1985.

Defendant said that Lyons was threatening foreclosure in July 1985 because the note was past due. He told plaintiff they had to pay Lyons but plaintiff refused to put any more money into the project. Plaintiff told defendant that when Lyons foreclosed plaintiff could buy the property for $.10 on the dollar. Plaintiff demanded an accounting. Defendant said he would give an accounting if plaintiff deposited $1 million into an escrow account for Lyons. Defendant said he had given plaintiff several extensions to pay the $1 million capital contribution. Plaintiff did not pay the money. Defendant obtained a loan after pledging the property and paid off Lyons. Plaintiff was released from his obligation to pay Lyons as a result.

There was other testimony and evidence regarding certain entries in Chateau's corporate minutes. Evidence was introduced to show that corporate minutes which reflected defendant's version of the modification agreement were fraudulent. There was evidence as well as an admission by defendant that corporate funds were used by defendant for noncorporate expenses.

In its December 11, 1987, order, the trial court found that the parties initially formed a joint venture to develop the property. The order also provided that the parties formed Chateau, a subchapter S corporation, as a business entity to carry out the development. The parties' relationship was that of joint venturers or partners, and they owed fiduciary duties to one another. As part of the agreement, plaintiff was to contribute capital of $1.25 million. Subsequent to plaintiff's payment of a portion thereof, the parties orally modified the agreement. Under the modification plaintiff was personally to guarantee a loan with Lyons for $1.6 million rather than make payment of the balance. The modification was made for consideration. Plaintiff's testimony was found more direct and credible than defendant's concerning the modification. The trial court ordered an accounting.

The court amended its order in its February 10, 1988, order. It denied defendant's post-trial motion and added certain findings. It was determined that plaintiff had a 30% interest, defendant had a 70% interest, and defendant was not to take a 15% management fee over his 70% interest. Plaintiff's capital contribution of $250,000 was to be paid back before profits were paid. Plaintiff was a shareholder in Chateau.

An accounting hearing began on January 16, 1990. A judgment order was entered on August 8, 1990. It incorporated the December 11, 1987, and February 10, 1988, orders by reference. The order also incorporated by reference the trial court's oral findings on the accounting as evidenced by a certain report of proceedings. The court

had made a line-by-line accounting in that transcript. It was determined that defendant owed punitive damages of $20,000 due to certain aggravating circumstances. In mitigation the court considered defendant's contribution of money to Chateau over the years that he was not obligated to pay. His contributions were used as a setoff against money due Chateau. Plaintiff was found to have used corporate funds to buy tires. Defendant was ordered to pay $658,908.66 in favor of plaintiff for the use and benefit of Chateau. The corporation was ordered dissolved.

In an order entered on October 23, 1990, the court denied both parties' petitions for attorney fees under Supreme Court Rule 137 (134 Ill. 2d R. 137). Plaintiff was allowed to recover $95,755.39 in attorney fees and costs from the proceeds of the judgment order under a common-fund theory.

In the interests of clarity, we initially address defendant's fifth issue. Defendant argues that the agreement was modified to extend plaintiff's obligation to pay $1 million for 18 months but did not release plaintiff from payment. He claims the trial court erred in finding that plaintiff was "excused" from making the $1 million capital contribution. Defendant is apparently asserting that the trial court's findings with respect to the modification are against the manifest weight of the evidence. He has failed to even mention that standard of review under this issue in his initial brief, *i.e.*, against the manifest weight of the evidence. *Borys v. Rudd* (1990), 207 Ill. App. 3d 610.

We also note that despite the rather voluminous record in this case, defendant's brief contains a statement of facts of only 2½ pages in length. With few exceptions, he merely sets forth the testimony, largely by him, which supports his version of the oral agreement between the parties. After examining defendant's issues, particularly his claim that the evidence does not support the trial court's findings, it is clear he has not provided the facts necessary to an understanding of the case (134 Ill. 2d R. 341(e)(6)) despite his claim to the contrary in his reply brief. Defendant aggravates this situation by claiming that plaintiff's supplement to defendant's statement of facts is inaccurate and filled with half-truths, innuendos, and self-serving "immaterialities." Yet, defendant does not point out any specifics regarding his allegations.

■ Under this issue, defendant cites to one Federal case, which in turn cites to an Illinois case, on a point of law that is not relevant in addressing whether the trial court's finding of a modification was against the manifest weight of the evidence. (*Chicago College of Osteopathic Medicine v. George A. Fuller Co.* (7th Cir. 1985), 776 F.2d 198;

*Hartwig Transit, Inc. v. Menolascino* (1983), 113 Ill. App. 3d 165.) Defendant has not provided citation to authority in violation of Supreme Court Rule 341(e)(7). (134 Ill. 2d R. 341(e)(7); *In re Marriage of Carey* (1989), 188 Ill. App. 3d 1040.) He has failed to provide citation to the record also in violation of the rule. (134 Ill. 2d R. 341(e)(7); *Carey*, 188 Ill. App. 3d at 1045.) We are not required to search the record for the purpose of reversing a judgment. (*In re Marriage of Hofstetter* (1981), 102 Ill. App. 3d 392.) Defendant puts forth rhetorical questions in place of argument. He attempts to remedy these failures in his reply brief which is improper. (See *Resudek v. Sberna* (1985), 132 Ill. App. 3d 783.) We have already pointed out defendant's inadequate statement of facts. A reviewing court is entitled to have the issues clearly defined with pertinent authority cited and cohesive arguments presented, and arguments not adequately presented are waived. (*Vincent v. Doebert* (1989), 183 Ill. App. 3d 1081.) Therefore, we do not address defendant's claim that the trial court's findings with respect to the modification are against the manifest weight of the evidence and deem that issue waived. See *Reed Yates Farm, Inc. v. Yates* (1988), 172 Ill. App. 3d 519.

Next, defendant contends that plaintiff has no standing to bring an accounting action. He breaks this issue into several points or subissues as follows. Defendant claims that plaintiff abandoned the joint venture when he failed to pay the remaining $1 million capital contribution either when he first refused to pay it or later when defendant demanded it to pay the Lyons' loan. Defendant relies on various out-of-State cases to support his position that abandonment precludes plaintiff from an accounting. Defendant further asserts that because plaintiff materially and substantially breached the agreement by failing to pay $1 million, plaintiff cannot enforce his rights or seek benefits in an equity suit. Defendant states that by such breach plaintiff may be deemed to have rescinded or terminated the agreement.

Defendant argues that plaintiff lost his rights as a shareholder in the corporation when he lost his rights as a joint venturer since the corporation was only a way to carry out the joint venture. Thus, defendant claims plaintiff has no standing to bring the accounting action for himself or derivatively because plaintiff is not a shareholder. Lastly, defendant argues that plaintiff should not be allowed to pursue a suit in equity because of "unclean hands." Once again defendant reiterates that plaintiff's failure to pay the entire capital contribution even in the face of possible foreclosure made plaintiff guilty of "unclean hands."

■ We do not address any of these issues on their merits. These issues and defendant's arguments rely on the presupposition that the initial agreement was either not modified or modified so that plaintiff's obligation to pay $1 million was merely extended 18 months and was still in full force and effect, *i.e.*, defendant's contention in the first issue. This position is directly contrary to the trial court's findings on the modification in which it determined that plaintiff was no longer obligated to pay $1 million after the agreement was modified. The trial court's findings on the modification stand by virtue of our decision in the first issue. In view of defendant's failure to show that the trial court's findings concerning the modification were against the manifest weight of the evidence, these issues are not addressed.

In part II of defendant's brief, he claims the record mandates a reversal and remand to determine the amount of damages due defendant from plaintiff's breach. He reiterates his previous points that plaintiff breached the agreement, breached the modified agreement, abandoned the joint venture, etc. He claims the most plaintiff can claim is a return of his $250,000 less damages for breach and only a 6% interest in the corporation. Defendant refers to his claim for damages in his counterclaim. In the conclusion to his brief he asks for certain relief under the complaint and counterclaim.

■ We do not examine defendant's argument on the merits. First, to the extent this position involves defendant's counterclaim, defendant has assumed that a judgment was entered on the counterclaim. He has failed to present such an order to this court. The December 11, 1987, February 10, 1988, August 8, 1990, and October 23, 1990, orders appealed from do not include a finding on defendant's counterclaim. We have been unable to find such an order in the record.

A reviewing court must *sua sponte* inquire into its jurisdiction and decline to proceed if jurisdiction is lacking. (*Sutherland v. Norbran Leasing Co.* (1988), 180 Ill. App. 3d 95.) An appellate court may hear appeals from final judgments or where an exception specified by the supreme court rules is applicable. (*Flores v. Dugan* (1982), 91 Ill. 2d 108.) Since no judgment was entered on the counterclaim, we have no jurisdiction to determine defendant's issue. However, the court did make a proper Rule 304(a) finding with respect to the other claims on appeal, and, therefore, those matters are properly before us. 134 Ill. 2d R. 304(a).

Second, part II relies on a presupposition that the agreement was not modified or modified in the manner defendant asserts. Defend-

ant's argument in part II is merely a restatement of his previous issues which have already been deemed waived by this court.

Lastly in part II, defendant generally states the trial court erred in ordering dissolution. This point appears to be tied to and supported by his other claims about abandonment, damages, etc. He has failed to supply citation of authority or argument on this matter. The "issue" with respect to the order of dissolution is therefore waived. *Village of Roxana v. Costanzo* (1968), 41 Ill. 2d 423; *Fuller v. Justice* (1983), 117 Ill. App. 3d 933.

■■ Next, defendant asserts that regardless of which version of the modification exists there was no consideration to support it. (*Schweickhardt v. Chessen* (1928), 329 Ill. 637.) He claims the modification was not binding as a result. Since we have already affirmed the findings of the trial court with respect to the terms of the modification, it is those terms which are before us.

To support a modification of an agreement, there must be consideration. (*Sciarabba v. Chrysler Corp.* (1988), 173 Ill. App. 3d 57.) Valuable consideration for a contract consists of some right, interest, profit or benefit accruing to one party, or some forbearance, detriment, loss or responsibility given, suffered or undertaken by the other. (*Russell v. Jim Russell Supply, Inc.* (1990), 200 Ill. App. 3d 855.) Any act or promise which is a benefit to one party or a detriment to the other is a sufficient consideration to support a contract. (*Steinberg v. Chicago Medical School* (1977), 69 Ill. 2d 320; *Libertyville Township v. Woodbury* (1984), 121 Ill. App. 3d 587.) A promise to do something one is already obligated to do is no consideration and creates no new obligation. (*Moehling v. O'Neil* (1960), 20 Ill. 2d 255.) Benefit and detriment have technical meanings, and neither needs to be actual. *Hamilton Bancshares, Inc. v. Leroy* (1985), 131 Ill. App. 3d 907.

Defendant argues that plaintiff was to supply the "seed" money to begin the project. When plaintiff failed to provide $1 million, a construction loan became necessary to supply the "seed" money. Plaintiff's coguarantee of the note was therefore something plaintiff was already obligated to do and did not constitute consideration.

Plaintiff's initial obligation was to provide $1.25 million in capital of which he paid $250,000. The agreement was modified whereby plaintiff would coguarantee a note for $1.6 million. In becoming a guarantor, one promises to pay a debt in the event another fails to do so. (*Town & Country Bank v. E. & D. Bancshares, Inc.* (1988), 172 Ill. App. 3d 1066.) Plaintiff now became liable for an additional $600,000 for which he had no obligation under the previous agree-

ment. Plaintiff did not promise something that he was already obligated to do. There was consideration for the agreement.

Defendant also argues that plaintiff knew there was an unlikely possibility of paying any sum under the guarantee because the joint venture would at a minimum make some payments. He discusses the ramifications of foreclosure and the liability for only a deficiency judgment and then speculates about the value of the property exceeding the loan. He points out that he eventually took another loan to pay off the construction loan. Defendant's argument goes to the adequacy of the consideration. The question of the adequacy of consideration is not for the court to inquire into. (*Sta-Ru Corp. v. Mahin* (1976), 64 Ill. 2d 330.) Upon inquiry, however, the adequacy of consideration must be determined as of the time of the modification. (See *Russell v. Jim Russell Supply, Inc.* (1990), 200 Ill. App. 3d 855.) There was adequate consideration for the modification when it was made as we have already stated. Defendant also incorrectly states that there must be a detriment to plaintiff *and* a benefit to defendant rather than a benefit to one party *or* a detriment to the other. (*Steinberg*, 69 Ill. 2d at 330.) In any event plaintiff suffered a detriment by incurring greater financial and legal liability, and defendant gained an additional $600,000 working capital more than he would have had under the original agreement.

■ Irrespective of any of the foregoing, a modification which has been executed will not be disturbed by the court even in the absence of consideration. (*Snow v. Griesheimer* (1906), 220 Ill. 106; *Protective Insurance Co. v. Coleman* (1986), 144 Ill. App. 3d 682.) The $1.6 million loan was obtained from Lyons, and plaintiff signed as a coguarantor on the note thus releasing him from his prior obligation. The modification was therefore executed.

In another issue defendant claims that the modification was not valid because it was the result of duress. (*People ex rel. Carpentier v. Daniel Hamm Drayage Co.* (1959), 17 Ill. 2d 214.) Specifically, defendant is contending that he agreed to the modification due to economic duress caused by plaintiff. He claims that when plaintiff refused to make his $1 million contribution, plaintiff forced him into a construction loan.

Duress is a condition where one is induced by a wrongful act or threat of another to make a contract under circumstances which deprive him of the exercise of his free will, and a contract executed under duress is voidable. (*Kaplan v. Kaplan* (1962), 25 Ill. 2d 181.) The acts or threats must be wrongful, and wrongfulness is not limited to acts that are criminal, tortious or in violation of a contractual duty

but extends to acts wrongful in a moral sense. (*Kaplan*, 25 Ill. 2d at 186; *Enslen v. Village of Lombard* (1984), 128 Ill. App. 3d 531, 533.) The defense of economic duress is also known as "business compulsion" and is similar to moral duress. (*Herget National Bank v. Theede* (1989), 181 Ill. App. 3d 1053.) The elements of economic duress are a wrongful act and the absence of the quality of mind essential to the making of a contract. (*Kewanee Production Credit Association v. G. Larson & Sons Farms, Inc.* (1986), 146 Ill. App. 3d 301.) Duress is not shown by the fact one is subjected to mere annoyance, vexation, personal embarrassment, a difficult bargaining position or the pressure of financial circumstances. (*Herget*, 181 Ill. App. 3d at 1057.) Unless wrongful or unlawful pressure is applied, there is no business compulsion or economic duress. *Kewanee*, 146 Ill. App. 3d at 305.

■ Defendant certainly did not prove he agreed to the modification due to economic duress. (*First Security Bank v. Bawoll* (1983), 120 Ill. App. 3d 787.) The evidence showed that plaintiff initially failed to make his entire contribution before the agreement was modified. However, there is no evidence that plaintiff used wrongful or unlawful pressure to secure a modification as a result. Plaintiff did recognize the position he put defendant in and offered to supply defendant with sufficient capital, $330,000, to complete the purchase of the property. He offered to absorb any loss or to give any profit to defendant from a resale of the property. He offered defendant the opportunity to secure other investors. Defendant failed to prove that plaintiff pressured defendant into this modification. Plaintiff did not withhold payment to force a modification without new consideration. It was defendant who suggested the loan and the modification. Even in defendant's testimony concerning his version of the modification, defendant did not testify that plaintiff pressured or coerced him or tried to use defendant's financial situation as a leverage to obtain a modification. There was no evidence that defendant lacked the quality of mind essential to making the modification (see *Kewanee*, 146 Ill. App. 3d at 304), and, therefore, he failed to prove duress.

Turning to the cross-appeal for the moment, plaintiff contends that the trial court's findings with respect to two certificates of deposit (CDs) are against the manifest weight of the evidence. He claims that there was an admission by defendant that defendant commingled corporate funds with his own in these CDs. Thus, as a fiduciary, defendant had to prove conclusively what portion of the funds in the CDs was his. Plaintiff states that there is no such evidence in the record, and the trial court shifted the burden of proof to plaintiff. Therefore, the entire funds in the CDs should be awarded to Chateau.

Defendant stated in a request to admit facts that $4,166.68 in CD No. 28154, containing $651,855, were Chateau funds. He did not believe and had no information or knowledge that any additional portion was purchased with corporate funds. CD No. 28154 was in defendant's and defendant's wife's name. CD No. 29259 contained $63,307 in defendant's name, and defendant had admitted in a request to admit facts that $4,807.95 of this CD came from Chateau funds. He denied that any other funds in CD No. 29259 were Chateau's. There was evidence that $43,000 in CD No. 29259 came from another source and were not Chateau funds.

The trial court specifically found that $2,083.84 of Chateau funds were used to purchase CD No. 28154 and $4,877.95 in Chateau funds were used to buy CD No. 29259. Neither party raises an issue with respect to the actual dollar amounts found by the trial court, and we do not consider any error thereon. Defendant was ordered to reimburse those funds to Chateau. When plaintiff raised the issue regarding the remaining money in the CDs in his post-trial motion, the court stated it had found $2,083.84 of CD No. 28154 were Chateau funds "and that was all that was Lake Forest Chateau funds. As to certificate of deposit number 29259, I found only $4,877.95 was Lake Forest Chateau funds."

The rule is established that property which has been appropriated by another, and upon which a trust has been fixed, may be followed either in its original form or its altered form so long as it can be identified and as long as superior rights of third parties have not intervened. (*Winger v. Chicago City Bank & Trust Co.* (1946), 394 Ill. 94, 111.) Equity imposes a constructive trust upon the new form or species of property not only while it is in the hands of the original wrongdoer, but as long as it can be followed and identified into whosoever hands it may come, except those of a *bona fide* purchaser for value. (*Sadacca v. Monhart* (1984), 128 Ill. App. 3d 250.) Where the form of the trust property is changed by a fiduciary and the proceeds mingled with the mass of assets of the fiduciary's insolvent estate, the *cestui que* trust may resort to the mass if augmented by the trust property. (*People ex rel. Nelson v. Bates* (1933), 351 Ill. 439.) There is a duty resting upon trustees not to commingle their own property with that of beneficiaries. (*Winger*, 394 Ill. at 111.) When a trustee does commingle, in cases where a fiduciary relationship exists and he has obtained the property due to the relationship, the burden rests on the trustee to show, by strong and convincing evidence, the property or part thereof that belonged to the trustee before the commingling. (*Winger*, 394 Ill. at 111.) The trustee carries the burden of segregat-

ing the trust and nontrust funds when there is a commingling. (*Graham v. Mimms* (1982), 111 Ill. App. 3d 751, 766; *Robert P. Butts & Co. v. Estate of Butts* (1970), 119 Ill. App. 2d 242.) This rule is applicable to fiduciaries of corporations. (*Graham*, 111 Ill. App. 3d at 766.) If the trustee or fiduciary cannot identify his own funds, even though it be the entire mass, the mixed fund will be awarded to protect the beneficiary. *Grodsky v. Sipe* (E.D. Ill. 1940), 30 F. Supp. 656; see *Leigh v. Engle* (7th Cir. 1984), 727 F.2d 113; 4 J. Pomeroy, Equity Jurisprudence §1076 (1941).

■ Defendant herein was a fiduciary of Chateau because he was a director and an officer. (*Graham*, 111 Ill. App. 3d at 760-61.) He conceded he was a fiduciary of Chateau. He admitted that he used corporate funds to purchase CDs which were held in his name or his and his wife's name. Thus, those corporate funds could be followed to the CDs and a constructive trust imposed thereon for the benefit of Chateau in those amounts. (See *Sadacca*, 128 Ill. App. 3d 250.) Since the corporate funds were commingled with defendant's funds, defendant had to prove by strong and convincing evidence what part of the CDs belonged to him. *Winger*, 394 Ill. at 111; *Graham*, 111 Ill. App. 3d at 766.

The trial court's remark during the post-trial motion hearing does not show it shifted the burden of proof to plaintiff. Its statement indicates that it concluded based on the totality of the evidence that only those amounts stated were Chateau's and that the remaining funds were not the corporation's.

Based on the accounting evidence which was substantial, the trial court was shown how much money belonged to the corporation, where it was spent, and diverted, and other ways that it was applied. This evidence in total proved that the remaining amounts in the CDs, other than those funds shown to be Chateau's, were from some source other than the corporation. While defendant did not introduce direct evidence relating to each dollar in the CDs, he was able to sustain his burden of proof by strong and convincing evidence that the remaining money in the CDs, although commingled with corporate assets, was not Chateau's. The trial court's finding is not against the manifest weight of the evidence.

■ In the next issue, defendant contends that the trial court erred in awarding plaintiff part of his attorney fees from the judgment proceeds under the common-fund exception. Plaintiff sought a total of $257,902.67 in costs and attorney fees for establishing the common fund for the corporation. The trial court determined the reasonable value thereof to be $191,510.78. It then divided that amount

in half because there were only two shareholders and ordered $95,755.39 to be paid to plaintiff from the judgment proceeds awarded to Chateau. He argues that since only plaintiff and defendant share in the fund, it is inequitable to award fees. (*Baker v. Pratt* (1986), 176 Cal. App. 3d 370, 222 Cal. Rptr. 253; *Hsu Ying Li v. Tang* (1976), 87 Wash. 2d 796, 557 P.2d 342.) Because there are only two shareholders, applying the common fund to this case shifts the liability to defendant as the losing party according to defendant. *Junker v. Crory* (5th Cir. 1981), 650 F.2d 1349.

Plaintiff, on the other hand, agrees with the application of the common-fund exception to this case. However, in his cross-appeal, plaintiff contends that the trial court abused its discretion in awarding only one-half of plaintiff's attorney fees from the fund. Plaintiff distinguishes the case relied upon by the court, *Smillie v. Park Chemical Co.* (6th Cir. 1983), 710 F.2d 271, and asks that all his attorney fees be awarded. No issue is raised with the court's determination of the reasonable value of the costs and attorney fees by either party.

Under the "American Rule," each party must bear its own costs of litigation and attorney fees absent legislative authority to the contrary. (*Kaplan v. Mahin* (1979), 79 Ill. App. 3d 848; see *City of Chicago v. Fair Employment Practices Comm'n* (1976), 65 Ill. 2d 108.) A primary, judge-created exception to this rule has been to award expenses where a plaintiff has successfully maintained a suit, usually on behalf of a class, that benefits a group of others in the same manner as himself. (*Mills v. Electric Auto-Lite Co.* (1970), 396 U.S. 375, 392, 24 L. Ed. 2d 593, 606, 90 S. Ct. 616, 625.) This common-fund doctrine allows a party who has conferred a benefit on another through litigation to recover a share of attorney fees from those who benefit. (*Independent Voters v. Illinois Commerce Comm'n* (1989), 189 Ill. App. 3d 761.) It is an established exception to the general rule based upon equitable concepts that a court may, in its discretion, order an allowance of attorney fees to a party who has maintained a successful suit for the creation, preservation, protection or increase of a common fund at his own expense. See *Hallmark Personnel, Inc. v. Pickens-Kane Moving & Storage Co.* (1980), 82 Ill. App. 3d 18.

The common-fund doctrine has been applied in shareholders' derivative actions where the courts have increasingly recognized that expenses incurred by one shareholder in the vindication of a corporate right of action can be spread among all shareholders through an award against the corporation. (*Mills*, 396 U.S. at 393-94, 24 L. Ed. 2d at 607, 90 S. Ct. at 626.) Illinois has adopted the general rule that if a plaintiff in a stockholders' suit is successful and the benefit goes

to the corporation, the plaintiff is entitled to recover his necessary expenses and disbursements, including attorney fees. (*Bingham v. Ditzler* (1943), 320 Ill. App. 88; accord *Romanik v. Lurie Home Supply Center, Inc.* (1982), 105 Ill. App. 3d 1118; *Ross v. 311 North Central Avenue Building Corp.* (1970), 130 Ill. App. 2d 336; *Auer v. Wm. Meyer Co.* (1944), 322 Ill. App. 244; see generally *Forkin v. Cole* (1989), 192 Ill. App. 3d 409.) Attorney fees and costs in such a situation may be awarded in the discretion of the court according to equitable rules and principles, and generally they must come from the fund. (*Ross*, 130 Ill. App. 2d at 351.) The *Ross* court indicated that under the equitable rules and principles in that case, defendants could properly be required to pay all or part of plaintiff's costs and fees. The *Ross* defendants were found to have committed fraudulent and oppressive acts. A court of review should not vacate an award of attorney fees without a showing of an abuse of discretion by the trial court. *Lurie v. Canadian Javelin Ltd.* (1982), 93 Ill. 2d 231, 239; *Lee v. Retirement Board of the Policeman's Annuity & Benefit Fund* (1964), 31 Ill. 2d 252, 256.

In *Mid-West National Bank v. Metcoff* (1974), 23 Ill. App. 3d 607, this court questioned the validity of *Ross* (130 Ill. App. 2d 336). It noted the conflict in Illinois as to whether there were any equitable principles upon which attorney fees may be awarded in the absence of statute or contract. Finding *Midwest* distinguishable from *Ross*, the conflict was not decided by the court. It is clear, however, that the common-fund doctrine, which is based on equitable concepts, allows a party who has conferred a benefit on another through litigation to recover a share of attorney fees from those who benefit. (*Independent Voters*, 189 Ill. App. 3d at 766; see *Baier v. State Farm Insurance Co.* (1977), 66 Ill. 2d 119.) The common-fund doctrine is an exception to the American rule, and *Ross* followed the exception. *Hallmark*, 82 Ill. App. 3d at 24.

This court and the parties on appeal have been unable to locate an Illinois decision which addresses the use of the common-fund doctrine where there are only two shareholders. It is apparent from the case law in other jurisdictions that there is a split of authority on this issue. We first examine those cases relied upon by defendant.

In *Baker v. Pratt* (1986), 176 Cal. App. 3d 370, 222 Cal. Rptr. 253, the common-fund doctrine was found not to apply where the corporation consisted of two shareholders. The court reasoned that only the respondent suffered a detriment by the appellant's misappropriation of funds because they were the only shareholders. The respondent's ultimate objective then was not to secure a common fund but to

establish personal adverse interests. There were no "passive beneficiaries" of the respondent's litigation who should bear their fair share of the litigation costs. *Baker* is largely representative of defendant's position.

Defendant relies on *Gustafson v. Gustafson* (1987), 47 Wash. App. 272, 734 P.2d 949, wherein the plaintiff brought a derivative suit to void the sale of property indirectly owned by the corporation. The plaintiff had only an equitable interest in certain stock as a pledgee. There was only one shareholder. The court found the common fund inapplicable because the plaintiff did not benefit a large group. She was the only person who benefitted, and there was no showing that other corporate creditors were in a better position because of the suit.

*Hsu Ying Li v. Tang* (1976), 87 Wash. 2d 796, 557 P.2d 342, concerned a partnership accounting and dissolution. The petitioner was awarded $6,973.94, which included one-half ($1,818.94) of the petitioner's attorney fees. The court found that while the suit preserved and protected a common fund, *i.e.*, the partnership assets, the suit merely benefitted the plaintiff and no others because there were only two partners. The court affirmed the award of fees anyway based on the inherent equitable powers of the court. The facts and circumstances of the case showed breaches of fiduciary duties by the defendant which allowed the court to conclude that fees were properly awarded. The trial court herein noted the special circumstances of the instant case as a factor in awarding fees. These circumstances generally included misuse of funds, commingling of funds, backdating sworn documents, a failure to keep records, etc.

In both *Catullo v. Metzner* (1st Cir. 1987), 834 F.2d 1075, and *Junker v. Crory* (5th Cir. 1981), 650 F.2d 1349, the courts refused to award attorney fees under the common-fund doctrine. The fees in *Junker* were ordered paid to the plaintiff from the corporation's judgment. However, the court of appeals found the suit a derivative one in name only. The corporation was no longer in existence. For practical purposes the award was recoverable only by the shareholders according to their interest as there was no corporate entity to claim the recovery. The court noted that fees were not recoverable in a derivative action if the effect was to shift the liability to the defendant. The derivative recovery was found unnecessary because the remaining shareholders were held liable to Junker as well as the corporation. In our situation here, defendant was not held liable to plaintiff as well as Chateau.

*Catullo* involved two 50% shareholders and relied on *Junker* as standing for the proposition that expansion of the common-fund doc-

trine threatens to encroach unlawfully upon the American rule. (See *Alyeska Pipeline Service Co. v. Wilderness Society* (1975), 421 U.S. 240, 44 L. Ed. 2d 141, 95 S. Ct. 1612.) The concern with imposing costs on the losing party leads courts to scrutinize the award to determine the actual effect of the judgment. The *Catullo* court denied an award of fees under the common-fund doctrine. However, it specifically stated that it was not holding that a common fund can never exist in a situation where the plaintiff and the defendant each hold 50% of a corporation, citing *Jones v. Uris Sales Corp.* (2d Cir. 1967), 373 F.2d 644.

Turning to those cases which support plaintiff, *Glenn v. Hoteltron Systems, Inc.* (1989), 74 N.Y.2d 386, 547 N.E.2d 71, involved two shareholders of a corporation. Corporate assets had been diverted by shareholder Schachter for his own profit which resulted in a corporate injury. The innocent shareholder, Kulik, was injured only to the extent he was entitled to share in the profits. His injury was derivative. Thus, the profits were to be returned to the corporation and not to Kulik. The court also determined that Kulik's attorney fees were to be paid by the corporation and not Schachter. The fees were ordered to paid out of the award to the corporation.

In *Jones v. Uris Sales Corp.* (2d Cir. 1967), 373 F.2d 644, there were two shareholders of a corporation. The court ordered that the plaintiff's attorney fees be paid from the award to the corporation rather than from the defendant individually.

Defendant herein attempts to distinguish *Jones* and *Glenn* on the basis that they stand only for the proposition that the fees are paid by the corporation rather than the individual defendant. He states that is not the issue in this case. It is clear from reading *Glenn* and *Jones* that there was a New York statute involved which provided that a successful litigant in a shareholders' derivative action may recoup legal expenses and attorney fees from the proceeds of the judgment in favor of the corporation. There is no such statutory provision in the Business Corporation Act of 1983 (Ill. Rev. Stat. 1989, ch. 32, par. 1.01 *et seq.*). However, Illinois provides for the same kind of recovery by case law. (*Ross*, 130 Ill. App. 2d at 350; *Bingham*, 320 Ill. App. at 95.) We fail to find a distinction between the situation in this case and *Glenn* and *Jones* as defendant contends. This case involves payment of plaintiff's attorney fees by the corporation when the common fund applies. Defendant herein is being ordered to return certain funds to the corporation by the award, and plaintiff's attorney fees are to be paid from the award to Chateau, *i.e.*, the corporation. This is the scenario in *Jones* and *Glenn*. There were only two shareholders in *Jones*

and *Glenn,* yet the plaintiffs were entitled to an award of fees from the corporation. *Jones* and *Glenn* are relevant authority for plaintiff's position.

There were two shareholders in *Cole Real Estate Corp. v. Peoples Bank & Trust Co.* (1974), 160 Ind. App. 88, 310 N.E.2d 275, wherein defendant owned all but 86 of 4,120 shares. The defendant was found to have been unjustly enriched through the use of corporate property and ordered to pay $6,300 to the corporation. The corporation was ordered to pay the plaintiff's attorney fees for securing the judgment for the corporation. *Sherrer v. Hale* (1982), 248 Ga. 793, 285 S.E.2d 714, also supports plaintiff's position that attorney fees can be awarded where there are two shareholders.

Defendant contends that there are no passive beneficiaries of the fund since there are only two shareholders. He claims that an award of fees is designed not to saddle the unsuccessful party with the expenses. (See *Mills,* 396 U.S. at 396-97, 24 L. Ed. 2d at 609, 90 S. Ct. at 628.) According to defendant he is penalized by the award, and attorney fees may not be awarded in derivative actions where they effectively cast the expenses on the losing party. (*Bailey v. Meister Brau, Inc.* (7th Cir. 1976), 535 F.2d 982.) He argues that the common-fund doctrine is used to prevent the unjust enrichment of those who benefit at plaintiff's expense. (*Trustees of the Internal Improvement Fund v. Greenough* (1882), 105 U.S. 527, 26 L. Ed. 1157; *Ramey v. The Cincinnati Enquirer, Inc.* (6th Cir. 1974), 508 F.2d 1188.) Defendant claims "corporate therapeutics" are not relevant in this case. *Mills,* 396 U.S. at 396, 24 L. Ed. 2d at 609, 90 S. Ct. at 628.

The trial court in the instant case noted that the common-fund doctrine was not applicable solely for "passive beneficiaries." It found that the doctrine encouraged meritorious derivative actions by small shareholders and that this purpose was known as "corporate therapeutics." The court found this purpose applicable whether there were two shareholders or hundreds. The other purpose cited by the court was the benefit to the corporation for which it would have had to pay for itself. This latter point is supported by *Glenn v. Hoteltron Systems, Inc.* (1989), 74 N.Y.2d 386, 547 N.E.2d 71, and *Jones v. Uris Sales Corp.* (2d Cir. 1967), 373 F.2d 644.

The trial court found that there should be recovery of fees in this case due to other special circumstances involved. These were not detailed by the court other than noting misuse of funds and that plaintiff had to undertake the massive task of restructuring the corporation's financial history without knowing he would benefit. However, the judgment order lists several "special" circumstances, and the

court had already referred to commingling and backdating of sworn documents. This approach by the court is supported by *Hsu Ying Li v. Tang* (1976), 87 Wash. 2d 796, 557 P.2d 342. (See *Ross*, 130 Ill. App. 2d 336.) The court's reference to plaintiff's inability to know if he would profit from the suit indicates that this was not a derivative suit in name only as was the situation in *Junker* (650 F.2d 1349).

The United States Court of Appeals for the Seventh Circuit found that an award of attorney fees could not be made for the purpose of enforcing the policy of the securities laws. (*Bailey*, 535 F.2d 982.) The *Bailey* court found that while a stockholders' derivative suit exception to the American rule retained vitality under *Alyeska Pipeline* (421 U.S. 240, 44 L. Ed. 2d 141, 95 S. Ct. 1612), the court would not extend the exception to the American rule to the circumstances of that case in view of *Alyeska*. The award of fees was made on that part of the judgment in which no actual damages were awarded.

The *Glenn* court cited the anomaly which exists when the wrongdoer is a shareholder in the corporation and thus ultimately shares in the proceeds of the damage award. (*Glenn*, 74 N.Y.2d at 392-93, 547 N.E.2d at 74.) While this anomaly is present in all successful derivative suits where the wrongdoer is a shareholder, the *Glenn* court observed it was magnified in closely held corporations. The court found that a damage award to the corporation rather than to the innocent shareholder was appropriate because an award directly to the shareholder would impair the rights of creditors. Thus, reasoning from this, the corporation received a benefit from the fund created despite the fact the fund was being paid by the defendant. *Glenn*, 74 N.Y.2d at 393, 547 N.E.2d at 74.

If we were to adopt defendant's reasoning, we are confronted with the question of just how many beneficiaries are needed for the common-fund doctrine to apply. In small, closely held corporations, those who own the majority interests and control the corporation and are found liable to the corporation for certain damages could argue that they are penalized by an award of attorney fees from the corporation. (See generally *Forkin v. Cole* (1989), 192 Ill. App. 3d 409; *Romanik*, 105 Ill. App. 3d 1118 (attorney fees were awarded).) Also, attorney fees were ordered to be paid to the plaintiff directly from the defendants in *Romanik*, as well as in *Ross* (130 Ill. App. 2d 336), both relying on the concept of a benefit to the corporation. We find the better approach is to award plaintiff reasonable attorney fees from the corporation's common fund despite the fact that there are only two shareholders in this case. The trial court did not abuse its discretion in this respect. See *Ross*, 130 Ill. App. 2d at 251.

Next, plaintiff urges in his cross-appeal that the trial court had no authority to lower the amount of attorney fees and costs awarded to plaintiff by 50% after it determined the reasonable value thereof. He distinguishes *Smillie v. Park Chemical Co.* (6th Cir. 1983), 710 F.2d 271, relied upon by the trial court herein to adjust the award downward. The *Smillie* court approved of a reduced award based on the economic benefit conferred on the corporation. Plaintiff distinguishes *Smillie* because there was no monetary benefit conferred on the corporation therein while here there is a substantial economic award to the corporation.

In Illinois the trial court may award attorney fees and costs in its discretion based on equitable rules and principles. (*Lee*, 31 Ill. 2d at 256; *Ross*, 130 Ill. App. 2d at 351.) A court of review should not vacate an award of attorney fees without a showing of an abuse of discretion by the trial court. (*Lurie v. Canadian Javelin Ltd.* (1982), 93 Ill. 2d 231.) The *Lurie* court noted that the benefit to the class, whether monetary, nonmonetary, or both, was of major importance in determining an amount of attorney fees to be awarded. *Lurie* involved a class action suit with a very small number of class members. In *Romanik* (105 Ill. App. 3d 1118), the appellate court cited the nature and extent of the litigation and the substantial benefit to the corporation in remanding the case to determine reasonable attorney fees.

The trial court herein had already determined the reasonable value of attorney fees and costs when it decided to reduce them by one-half, citing *Smillie* (710 F.2d 271). Its reasoning was based on the fact that there were only two shareholders. We find this determination to be an abuse of discretion. The court in *Smillie* noted that the district court could adjust an award of attorney fees up or down from the objective value of the services rendered in order to reflect the economic benefit conferred upon the corporation or other shareholders. No monetary award was accorded the corporation. The court of appeals affirmed the district court's decision to reduce the award.

Unlike *Smillie*, a substantial economic benefit was conferred on the corporation herein. We have determined that the mere fact alone that there are only two shareholders in this case does not preclude an award of attorney fees from the common fund. We do not find that such an award, the reasonableness of which has already been determined, should be reduced by one-half on the sole basis that there are only two shareholders. Therefore, the trial court abused its discretion. The amount of attorney fees and costs to be paid from the common

fund of the corporation to plaintiff is hereby ordered increased by $95,755.39, to reflect the full amount found by the trial court.

█ In his brief and during oral argument, plaintiff asked for an additional award of attorney fees for defending against defendant's appeal and prosecuting a cross-appeal under the common-fund theory. This amount would be determined by the trial court upon a remand according to plaintiff. He stated in oral argument that such fees would be justified because of the preservation of the common fund already awarded and the extent of any increase of the common fund under his commingling issue. Plaintiff's argument consisted of a couple of sentences in his brief, and he provided no citation of authority to justify an award of attorney fees for the appeal. The "issue" is deemed waived. *Village of Roxana*, 41 Ill. 2d 423; *Fuller*, 117 Ill. App. 3d 933.

In the last issue, plaintiff initially claimed in his cross-appeal that the trial court abused its discretion in denying plaintiff attorney fees under section 2—611 of the Code of Civil Procedure (Ill. Rev. Stat. 1987, ch. 110, par. 2—611) and Supreme Court Rule 137 (134 Ill. 2d R. 137). However, during oral argument on this case, plaintiff acknowledged that full recovery of attorney fees and costs, *i.e.*, $191,510.78, under the common-fund doctrine as well as under this last issue would be a double recovery. Plaintiff conceded that he sought only one full recovery of attorney fees and costs. Since we have determined that plaintiff is entitled to the full amount of attorney fees, $191,510.78, from the proceeds of the judgment awarded Chateau under the common-fund doctrine, the last issue concerning sanctions is not addressed.

Based on the foregoing, the judgment of the circuit court in all respects other than the amount of the award of attorney fees under the common-fund doctrine is affirmed. The October 23, 1990, order regarding the award of $95,755.39 to plaintiff as and for attorney fees and costs to be paid from the proceeds of the judgment order is hereby increased by $95,755.39 in accordance with this court's findings. The total amount due plaintiff for his attorney fees and costs under the common-fund doctrine is $191,510.78.

Affirmed in part; reversed in part.

UNVERZAGT and McLAREN, JJ., concur.