JAMES C. WALLENIUS *et al.*, Plaintiffs-Appellants, v. FRANCISCO SISON *et al.*, Defendants-Appellees (James F. Messenger and Company, Inc., Plaintiff; Bonita J. Hyland *et al.*, Defendants).

First District (5th Division)   No. 1—92—1248

Opinion filed February 11, 1993.

John P. Messina, of Chicago, for appellants.

Deborah J. Gubin, of Chicago, for appellees.

JUSTICE MURRAY delivered the opinion of the court:
On February 28, 1991, plaintiffs-appellants James and Sheila Wallenius entered into a contract to purchase a house located at

14707 South Sunset Court, Oak Forest, Illinois, for $122,500. Francisco and Darwisa Sison were the sellers. The Walleniuses made a downpayment of $15,000 and financed the balance with a mortgage loan from coplaintiff James F. Messenger & Co., Inc. (Messenger), in the amount of $108,500.

On April 26, 1991, the closing took place. Since the Sisons were unable to deliver possession on this date, a possession escrow of $1,100 was established with Bonita Hyland and Century 21-Beeline Realty, Inc. (Century 21), the Sisons' real estate agents. The Sisons vacated the premises the next day, April 27.

When the Walleniuses sought to take possession on April 28, they discovered on and around the premises highly toxic and hazardous materials including but not limited to: liquid mercury, liquified phenal, ammonium hydroxide, Xylene, 12 vials of contaminated blood samples, hypodermic needles and other medical waste.

The Walleniuses immediately notified State and local government authorities regarding the contamination. The government officials determined that the premises were unsafe and prohibited occupancy of the premises until such time as the premises were cleaned and certified by a licensed toxic waste removal contractor.

On April 29, 1991, the Walleniuses notified Messenger regarding the problem of the hazardous materials. They also told Messenger that they intended to file an action for rescission and other relief against the Sisons. Messenger requested that it be included as a coplaintiff in the suit. The Walleniuses agreed.

On May 2, 1991, the Walleniuses and Messenger jointly filed a four-count complaint. Count I sought damages against the Sisons under the Consumer Fraud and Deceptive Business Practices Act (see Ill. Rev. Stat. 1991, ch. 121½, par. 261 *et seq.*) alleging that the Sisons' failure to disclose the presence of the hazardous and toxic materials was fraudulent. Count II sought rescission of the contract. The plaintiffs sought to recover both the purchase price and consequential damages from the Sisons. In count III Messenger alleged that the contamination of the premises had diminished the value of the real estate that was security for the Walleniuses' mortgage loan of $108,500. Messenger requested a judgment for $108,500, the principal amount of the mortgage. Count IV alleged negligence against the broker for wrongful disbursement of the funds in the possession escrow after receiving notice that possession had not been delivered. We note the claim against the broker is not an issue in this appeal.

Also on May 2, 1991, the plaintiffs presented evidence in support of their motion for a temporary restraining order or in the alternative a preliminary injunction. The trial court entered a restraining order freezing the proceeds of the sale.

The trial court heard evidence on May 13, 14, and 20, 1991. On May 20, 1991, the trial court found that "this home is deemed uninhabitable [and] there is a right on the part of the plaintiffs to a safe home." The trial court ordered: (1) all proceeds of the sale to be returned to plaintiffs including possession escrow funds and "all parties shall facilitate the signing [and] transferring of any necessary letters or other documents to effect the transfer of title"; (2) that Century 21 return any commission as well as earnest and possession escrow money to plaintiff; (3) granted plaintiffs rescission of the contract dated February 28, 1991; (4) the prior temporary injunction be converted into a preliminary injunction; and (5) granted plaintiffs leave to file a petition for damages and attorney fees.

As of June 20, 1991, the Sisons had not returned the proceeds of the sale or taken back title, nor had they taken any steps to clean up the premises. On June 20, 1991, the Walleniuses filed their petition for damages and attorney fees. The petition sought to recover earnest money and out-of-pocket closing costs of $27,499.31, consequential damages of $16,867, and attorney fees of $11,506.

The Walleniuses sought reimbursement for the following expenses in their claim for consequential damages: $1,985.99 in hotel and motel expenses, $1,055.83 for meals in restaurants, and moving and storage expenses of $1,933.50. The Walleniuses negotiated a short-term lease to rent a furnished home for $5,000 ($1,000 per month for five months) and since this lease prohibited pets, the Walleniuses had to board the family dog during the controversy incurring a $1,706 expense.

The Walleniuses also sought to recover the income each lost as a result of the aborted transaction, and other miscellaneous expenses. Finally, they sought damages for their pain and suffering as well as the pain and suffering of their nine-year-old son. Additionally, on June 20, 1991, Messenger filed a separate claim for damages and fees totaling $6,298.24.

The Walleniuses sought reimbursement for many expenses under their homeowners insurance policy. However, their insurer denied the claim on the ground that the policy excluded losses due to the release or dispersal of contaminants or pollutants.

On June 14, 1991, the Sisons changed attorneys. On June 22, 1991, there was a settlement meeting between the parties. A settlement was not reached on that date.

The trial court held a conference on August 9, 1991. The transcript of that date merely indicates that the attorneys for the parties were to have a conference in chambers "off the record." On that date the parties tendered a draft settlement order to the trial court. The draft order was prepared by Thomas Grotta, the attorney for coplaintiff Messenger. James Wallenius was not present that day; however, the order is signed by Sheila and initialed by the attorneys present, including Paul Gentile, the Walleniuses' attorney. The order provided:

"(1) That Francisco and Darwisa Sison shall pay the sum of $141,182.23 through the repurchase of 14707 S. Sunset Court, Oak Forest, Illinois and at a closing to take place within approximately 3 weeks and the distribution of the closing and proceeds shall be distributed as follows: James F. Messenger and Company $112,955 plus interest from 8/9/91 to date of closing and Sheila and James C. Wallenius the balance of approximately $28,000.00

(2) that the settlement encompasses $53,000 previously tendered to Walleniuses, $20,000 of which they shall retain and $32,041.00 shall be tendered to James Messenger and Company pending closing of the repurchase;

(3) all other settlement to be disbursed at the closing of the repurchase of the home; [and]

(4) the parties shall sign at closing stipulation to dismiss with prejudice."

The trial judge signed the order that day.

After leaving the courtroom the Walleniuses sent a certified letter to all the parties declaring that:

"We, James and Sheila Wallenius hereby disaffirm and rescind our acceptance of the settlement that we believe we were coerced, bullied, intimidated, threatened and hurried into accepting earlier today.

I, Sheila made a telephone call to Judge Reynold's chambers at 3:00 p.m. today, requesting that the Clerk put aside the Order drawn today by Mr. Tom Grotta, and I ask the Judge NOT to sign it, until such time as my husband and I have had the opportunity to review the settlement figures, and obtain advice and counsel from other sources.

My complaints with regard to today's actions are as follows:

"* * *."

On August 22, 1991, Paul Gentile filed a motion to withdraw as counsel for the Walleniuses and the Walleniuses filed a *pro se* motion to vacate the order of August 9, 1991. Attached to the Walleniuses' motion as exhibit A was a letter from Commercial Federal Mortgage Corporation advising the Walleniuses that they had purchased the mortgage loan. On August 28, 1991, the trial court entered an order which: (1) allowed Paul Gentile leave to withdraw, (2) granted Messenger and the Sisons 20 days to respond, (3) granted the Walleniuses 10 days to reply, and (4) ordered that if the plaintiffs intended to rely on cases not contained in the pleadings, plaintiffs must give 14 days' notice.

On September 11, 1991, Messenger filed a motion to strike the Walleniuses' motion to vacate the August 9, 1991, order, a motion to strike the pleadings to dismiss the coplaintiff from the action, and a motion for turn-over of funds. On September 18, 1991, the Sisons filed a response to the motion to vacate. Attached to the Sisons' motion was the affidavit of Deborah Gubin, attorney for the Sisons.

On October 15, 1991, Paul Gentile filed an affidavit in support of plaintiff/buyers' motion to vacate. On October 21, 1991, John Messina was given leave to file his appearance on behalf of the Walleniuses and the affidavit of Paul Gentile was stricken.

On September 5, 1991, Norwest Mortgage Company (Norwest) rejected the Sisons' mortgage application. The Sisons eventually obtained financing elsewhere and the closing took place on November 13, 1991.

On November 7, 1991, the trial court struck the Walleniuses' motion to vacate and granted them seven days to file an amended motion. The trial court also granted the Sisons and Messenger seven days to file a response and the Walleniuses seven days to reply. On November 15, 1991, the Walleniuses filed an amended motion to vacate. The amended motion asserted that: (1) the agreement was based on a material mistake of fact, *i.e.*, that the Sisons were preapproved for a mortgage and could close within three weeks; (2) James Wallenius did not consent to the settlement; (3) the agreement was procured by duress and coercion; and (4) the terms of the order were unfair, unjust, and unreasonable. Attached to the motion were the affidavits of Paul Gentile, James Wallenius and Judy Whitely (an assistant vice-president of Norwest), as well

as a letter dated June 24, 1991 (from Ms. Gubin wherein the Sisons offered to settle the case), and a past-due notice from Commercial Federal Mortgage. Also attached to the motion was a letter from Lanette Dejan of Norwest indicating that based on the information provided to her by the Sisons, they were qualified to obtain a mortgage subject to the mercury spill cleanup. The affidavit of Judy Whitely indicated that the letter from Lanette Dejan did not constitute a preapproval of the Sisons' mortgage application, that Ms. Dejan did not have authority to write such a letter and that Ms. Dejan's employment had been terminated in September 1991.

On March 6, 1992, the trial court denied the amended motion to vacate. The trial court's order stated:

"The order of August 9, 1991 is not unjust as it was entered into by consent of the parties. *Hill Behan Lumber Co. v. First National Bank* 95 Ill. App. 3rd 426 *** an order entered by consent of parties is not a judicial determination of parties but a recital of their agreement."

On March 10, 1992, the Sisons moved for an order requiring the Walleniuses to return $2,276.77 the Sisons allegedly paid in excess of the amount that was required to be paid under the August 9, 1991, order. The Walleniuses objected and asserted several affirmative defenses. The trial court rejected these defenses and granted the Sisons' motion on July 10, 1992.

The Walleniuses assert two issues on appeal. First, that the trial court abused its discretion in summarily denying the motion to vacate without reviewing the facts presented and, second, that the trial court abused its discretion in summarily granting the motion for a return of funds. We note that neither coplaintiff Messenger nor codefendant Century 21 has appeared or filed briefs in this appeal.

For the following reasons, we must affirm the decision of the trial court.

I

The Walleniuses argue that the trial court abused its discretion in summarily denying the motion to vacate without reviewing the facts presented. They cite *Conley v. Peoples Gas, Light & Coke Co.* (1980), 82 Ill. App. 3d 1094, 1100, 403 N.E.2d 625, in support of the contention that where a judge holds the erroneous belief that she lacks discretionary authority and she makes a summary ruling on that basis, the court commits reversible error. The Walleniuses maintain that their motion to vacate set forth in detail the reasons

why the order of August 9 should be vacated, that the allegations in the motion were supported by affidavits and documents, but that the court did not review any of the evidence presented. Conversely, the Sisons maintain that the motion to vacate presented to the trial court was a motion to vacate a settlement agreement and not a judgment.

On August 22, 1991, a motion to vacate the order of August 9, 1991, was filed. On August 28, 1991, the trial judge set a briefing schedule and a hearing date. After briefing of the issues and a hearing, the plaintiffs' motion to vacate was stricken and they were given seven days to file an amended motion. A new briefing schedule was set and a new hearing date was given. On January 21, 1992, a hearing was held on the amended motion. After argument by all the parties, the trial judge stated she would review the file, take it under advisement and she would advise the parties by mail.

■■ The issues were briefed by the parties, with each of the parties supplying affidavits and other documents in support of their respective positions. The record reflects that the trial judge heard argument prior to ruling. The trial court cited the case of *Hill Behan Lumber Co. v. First National Bank* (1981), 95 Ill. App. 3d 426, 420 N.E.2d 268, as the basis for denial of the motion to vacate. We find no support for the contention that the trial court summarily denied the motion.

We find the Walleniuses' agreement to the settlement terms is apparent by the face of the order. The order itself begins with the statement:

> "Now in this matter coming to be heard upon the motions and petitions set for this date and a conference of all parties and the court having been conducted and parties having arrived upon full and complete settlement of all pending matters and this litigation as a whole."

The bottom of the order is signed by Sheila Wallenius and initialed by Paul Gentile.

■■ As a general proposition, a consent decree is not appealable because it does not constitute a resolution of a party's rights but is a mere recordation of their private agreement. (*People ex rel. Lampkin v. Brown* (1980), 81 Ill. App. 3d 869, 401 N.E.2d 1171; see also *People ex rel. Fahner v. Colorado City Lot Owners & Taxpayers Association* (1985), 106 Ill. 2d 1, 476 N.E.2d 409.) Once a consent decree has been entered it is generally considered to be binding on the parties and it cannot be amended or varied without the consent of each party. (*Dunaway v. Storm* (1975), 30 Ill. App.

3d 880, 884, 334 N.E.2d 825.) However, this is not without exception. A trial court has potential authority to modify a consent decree if circumstances so warrant. A court of equity does not abdicate its power to revoke or modify its mandate if it is satisfied that it resulted from fraudulent misrepresentation, coercion, incompetence of one of the parties, gross disparity in the parties' bargaining positions, or newly discovered evidence. (*Kandalepas v. Economou* (1989), 191 Ill. App. 3d 51, 54, 547 N.E.2d 496; *In re Haber* (1981), 99 Ill. App. 3d 306, 425 N.E.2d 1007.) Evidence that an agreement was entered into because of coercion, fraud or duress must be clear and convincing in order for courts to set aside the agreement. *In re Marriage of Carlson* (1981), 101 Ill. App. 3d 924, 930, 428 N.E.2d 1005; see also *In re Marriage of De Frates* (1980), 91 Ill. App. 3d 607, 414 N.E.2d 1188.

■ The Walleniuses argue that their motion papers raised substantial issues of duress and coercion. The Walleniuses point to the following circumstances: at the time of her acquiescence to the settlement Sheila and her family had been under the stress of living in temporary living quarters for four months, they had run out of money, and their attorney threatened to withdraw if they did not capitulate to settlement terms which they had already rejected six weeks earlier. The Walleniuses maintain that they and their attorney, Paul Gentile, were intimidated by the Sisons' attorney and Messenger's attorney. The Walleniuses point to the fact that Mr. Gentile was inexperienced in this area of law and that on the day of the settlement he stated that he would have to withdraw if they did not settle on that date. The Walleniuses seem to argue that the above problems were fraud on the part of the other parties. We disagree. The fact that Mr. Gentile threatened to withdraw and was inexperienced in this area of law may point to a cause of action against Mr. Gentile; however, it is not grounds for vacating this settlement agreement, and the fact that the Walleniuses rejected the same dollar amount as a settlement six weeks earlier is irrelevant.

Where consent to an agreement is secured merely because of hard bargaining positions or financial pressures, duress does not exist; a party must demonstrate inducement by a wrongful act or threat of another to execute an agreement under circumstances depriving him of the exercise of free will in order to invalidate an agreement on the basis of duress. (*Willcutts v. Galesburg Clinic Association* (1990), 201 Ill. App. 3d 847, 852-53, 560 N.E.2d 1.) The Walleniuses did not demonstrate fraud or duress and the trial court properly refused to vacate the settlement order.

As the court in *Sheffield Poly-Glaz, Inc. v. Humboldt Glass Co.* (1976), 42 Ill. App. 3d 865, 871, 356 N.E.2d 837, noted:

"[I]n all settlement agreements there is a compromising of claims. No party obtains what he alleges to be equitably his. Parties agree to accept less than their full claim in lieu of foregoing litigation."

Based on the record in this case we are unable to find by clear and convincing evidence that the settlement agreement was entered into by fraud, coercion or duress. Accordingly, the trial court did not err in refusing to vacate the settlement agreement.

Finally, we note that there is no order contained in the record indicating that the various counts of the plaintiffs' complaint were dismissed with prejudice. In fact, the record indicates that there never was any hearing or motions relating to the other counts in the complaint. The Sisons argue that by requesting rescission, the Walleniuses became limited to that relief. We agree. Two theories of relief, contractual damages and quasi-contractual restitution, are generally considered to be mutually exclusive; plaintiff may recover under either theory, but not both. (*Crum v. Krol* (1981), 99 Ill. App. 3d 651, 425 N.E.2d 1081.) The Walleniuses elected to proceed on rescission of the contract, thereby limiting their recovery to restitution. The Walleniuses argue that the Sisons waived this argument by failing to raise it in the trial court; however, it was not necessary for the Sisons to raise this point in the trial court.

## II

The Walleniuses maintain that the trial court's action in granting the Sisons' motion to require the return of the $2,276.77 was based on the erroneous belief that the court lacked the discretionary authority to consider the merits of the Walleniuses' affirmative defenses to the motion. The Walleniuses raised the following objections: (1) that the August 9, 1991, order was voidable because it was induced by a misrepresentation of a material fact, *i.e.*, that the Sisons had been preapproved for a mortgage; (2) that James Wallenius did not consent to the agreement; and (3) the August 9, 1991, order was the product of duress and coercion and its terms were unfair, unjust and unreasonable. The Walleniuses maintain that the trial court committed reversible error and cite *Conley v. Peoples Gas, Light & Coke Co.* (1980), 82 Ill. App. 3d 1094, 1100, 403 N.E.2d 625, in support of this position.

The Sisons maintain that their motion for the return of the money is consistent with the orders of August 9, 1991, and March

6, 1992. The Sisons argue that the trial court had considered the merits of the Walleniuses' motion to vacate the settlement and denied it and therefore *Conley* does not apply to the facts of this case.

In response, the Walleniuses argue that the one ruling does not automatically follow from the other and the Sisons' motion raised issues that were not raised by the Walleniuses' motion. The Walleniuses argue that one example is the fact that the settlement order of August 9 provided that the closing would occur within approximately three weeks, but that the closing didn't actually take place for more than 10 weeks, on November 13. The Walleniuses maintain that this delay was the fault of the Sisons not the Walleniuses, yet the Walleniuses were required to pay the three months of additional interest and thus they are entitled to a hearing on whether these extra interest payments can be offset against the Sisons' claim.

■ Consent decrees, which are utilized to effectuate settlement, are considered contracts between the parties to litigation, and accordingly the law of contracts controls their interpretation. The parties, not the court, chose the language of the document. (*Citizens Utilities Co. v. Centex-Winston Corp.* (1989), 185 Ill. App. 3d 610, 613, 541 N.E.2d 681, 683.) The settlement agreement could have provided that the Sisons make the additional interest payments if the closing did not take place within three weeks; it also could have incorporated a penalty provision if the closing did not take place. The same trial judge heard all the proceedings in this case. This motion was briefed by the parties and we find no support for the contention that the motion was summarily dismissed. We do not believe that *Conley* applies to the facts of this case. Nothing in the record suggests that the order for the return of $2,276.77 is inconsistent with the settlement agreement. Accordingly, we affirm the order granting the return of $2,276.77 in excess funds to the Sisons.

For all the reasons set forth above, we affirm the decision of the trial court.

Judgment affirmed.

GORDON, P.J., and COUSINS, J., concur.