**J.C.C. FOOD & LIQUORS,**
**Plaintiff–Appellant,**

v.

**UNITED STATES of America and**
**Department of Agriculture,**
**Defendants–Appellees.**

**No. 97–1766.**

United States Court of Appeals,
Seventh Circuit.

Argued Dec. 11, 1997.

Decided Jan. 12, 1998.

Alan P. Jacobus (argued), Chicago, IL, Gary S. Tucker, Chciago, IL, for Plaintiff–Appellant.

Edward Himmelfarb (argued), Department of Justice, Civil Division, Appellate Section, Washington, DC, Thomas P. Walsh, Office of the United States Attorney, Civil Division, Chicago, IL, for Defendants–Appellees.

Before POSNER, Chief Judge, and EASTERBROOK and RIPPLE, Circuit Judges.

RIPPLE, Circuit Judge.

J.C.C. Food & Liquors ("J.C.C.") brought this action in the district court to seek review of an administrative decision of the United States Department of Agriculture ("USDA") to withdraw permanently J.C.C.'s authorization to participate in the Food Stamp program. The district court granted the United States' motion for summary judgment. J.C.C. now appeals from that decision. For the reasons set forth in the following opinion, we affirm the judgment of the district court.

# I

## BACKGROUND

### A. *Facts*

J.C.C. is a food store in Chicago that participated in two federally funded programs providing food subsidy assistance to qualified persons: (1) The Special Supplemental Food Program for Women, Infants and Children ("WIC") and (2) The Food Stamp Program.

The WIC program is funded by federal money but is administered by the states. In 1994, the Illinois Department of Public Health ("IDPH"), the state agency designated to administer the WIC program, began investigating J.C.C. for WIC violations. A WIC monitor went to J.C.C. three times during May and June 1994 and presented WIC food instruments to the cashier to pay for the purchases. The food instruments provided to participants in the WIC program are blank and are filled out by the cashier at the time of purchase. *See* 7 C.F.R. § 246.12(r)(3); Ill. Admin. Code tit. 77, § 672.415(b), (e). On each occasion, the

cashier at J.C.C. accepted signed food instruments that did not have the purchase amount filled in.[1] J.C.C. then redeemed the instruments at values in excess of the price of the food purchased by the monitor.

As a result of this investigation, IDPH issued to J.C.C. a letter containing a Notice of Contract Breach, a Notice of Violations, a Notice of Contract Termination, a Notice of Fine Assessment and a Demand for Reimbursement. The letter informed J.C.C. that it had committed various violations, that it would be terminated from participation in WIC for a minimum of 3 years, that it was fined $6,750 and that it was required to pay $19.71 in reimbursement for the overcharging. IDPH also informed J.C.C. that it was entitled to an administrative hearing to appeal the action taken by IDPH and that "disqualification from WIC may result in withdrawal of authorization to participate in the Food Stamp Program in accordance with Section 278.1(n)(1) of the Food Stamp regulations."[2] R.11, Ex. 1 at 2.

J.C.C. initially requested a hearing to appeal the IDPH's actions. Prior to the hearing however, on April 12, 1996, J.C.C. and IDPH entered into a consent agreement. Under this agreement, J.C.C. agreed to permanent termination of its participation in the WIC program. J.C.C. also "expressly waiv[ed] its rights to contest the Notice[s]" in the letter, including the Notice of Violations. R.11, Ex. 3 at 1. For its part, IDPH withdrew its Notice of Fine Assessment and Demand for Reimbursement; that is, IDPH dropped the $6,750 fine and the $19.71 reimbursement amounts assessed against J.C.C. as a result of the violations.

The USDA then decided, on May 12, 1996, to withdraw permanently J.C.C.'s authorization to participate in the Food Stamp program. This action was taken in accordance with the federal law and regulations governing administration of the program. *See* 7 U.S.C. § 2021(g); 7 C.F.R. § 278.1(*o*). Section 278.1(*o*)(1) provides that:

> [The USDA] shall withdraw the Food Stamp Program authorization of any firm which is disqualified from the WIC Program based in whole or in part on any act which constitutes a violation of that program's regulation ... or for any of the following specific program violations:
>
> . . . .
>
> (vi) Charging WIC customers more for food than non-WIC customers or charging WIC customers more than current shelf price; or
>
> (vii) Charging for food items not received by the WIC customer or for foods provided in excess of those listed on the food instrument.

*Id.* The regulations also provide that such withdrawal may not occur unless the violator "was provided notice that it could be withdrawn from the Food Stamp Program based on the WIC violation." 7 C.F.R. § 278.1(*o*)(2).

J.C.C. sought administrative review of the USDA's decision. Accordingly, an administrative review officer conducted that review. In upholding the administrative decision, the hearing officer determined that the consent agreement entered into by J.C.C. provided for permanent termination of J.C.C.'s participation in the WIC program because J.C.C. had been guilty of WIC violations, including overcharging customers. Therefore, he concluded that J.C.C.'s authorization to participate in WIC was terminated involuntarily as a result of WIC violations it had committed and that those violations were of the type explicitly enumerated in the regulations as grounds for withdrawal of Food Stamp program authorization. J.C.C. then sought review of the USDA's action in the district court. *See* 7 U.S.C. § 2023(a)(13).

---

1. This itself was a violation. Illinois regulations provide that a vendor is not to accept a food instrument that is signed before the vendor has filled in the actual amount of sale. *See* Ill. Admin. Code tit. 77, § 672.415(b).

2. Following the administrative action and the district court's decision in this matter, the regulation's subsection (n) was redesignated as subsection (*o*), the relevant terms of which are enumerated below. The regulation was not modified in any substantive way material to the discussion in this case.

### B. *Proceedings in the District Court*

J.C.C. filed suit seeking review of the USDA's decision to withdraw permanently J.C.C.'s authorization to participate in the Food Stamp program. In support of its motion for summary judgment, the United States filed a statement of facts in accord with Rule 12(M) of the Local General Rules of the United States District Court for the Northern District of Illinois, but J.C.C. failed to respond to that submission as was required under Local Rule 12(N). Consequently, the district court accepted the government's version of the facts as true. The court then held that the USDA's decision to withdraw permanently J.C.C.'s authorization was valid because the withdrawal was based on a violation set forth in 7 C.F.R. § 278.1(n)(1), and J.C.C. had received notice that disqualification from the WIC program could trigger mandatory withdrawal of authorization to participate in the Food Stamp program.

## II

## DISCUSSION

■ This court reviews de novo the district court's grant of summary judgment. J.C.C. submits that the district court erred in granting judgment in favor of the United States because the government failed to establish that J.C.C. violated the regulation by selling food to WIC customers at a price in excess of the current shelf price. Until the government establishes this factual predicate, argues J.C.C., the USDA's withdrawal of J.C.C.'s authorization to participate in the Food Stamp program cannot be valid under 7 C.F.R. § 278.1(*o*)(1). J.C.C. relies on contract principles and argues that the consent agreement is the only record in this case. It therefore contends that the district court should have considered only the four corners of that document in determining whether

J.C.C. committed any violation. In J.C.C.'s view, the language of the consent agreement does not establish that J.C.C. engaged in any prohibited conduct; consequently, J.C.C. maintains that the district court's decision in favor of the United States was incorrect. Furthermore, argues J.C.C., the USDA administrative proceedings do not provide an opportunity for a full evidentiary hearing and therefore do not protect the procedural due process rights of J.C.C.

In evaluating these contentions, we note, at the outset, that there is no dispute that J.C.C. was notified by IDPH that it was charged with violating WIC regulations by selling food to WIC customers at a price in excess of the shelf price. It also is undisputed that such conduct, if established, requires the USDA to remove the malefactor's authorization to participate in the Food Stamp program.

J.C.C. settled this WIC violation claim by entering into the consent agreement with the State of Illinois. This case therefore turns on the appropriate interpretation of that consent agreement. We must determine whether that document contains an admission that J.C.C. engaged in the underlying conduct. J.C.C. correctly invokes contract principles to guide the interpretation of the consent agreement.[3] Illinois accused J.C.C. of charging its WIC customers more for food than the prevailing price in order to inflate the return on the WIC instruments. Under the regulations, this conduct, if proved, would result in mandatory disqualification from the Food Stamp program. The consent agreement commences with a recitation of the pendency of that charge. It then recites that the parties have agreed to the imposition of certain sanctions and to otherwise dismiss the matter subject to the conditions stated in the consent agreement.

The consent agreement next recites the legal position which each party agrees to

---

3. *See Wallenius v. Sison,* 243 Ill.App.3d 495, 183 Ill.Dec. 448, 454, 611 N.E.2d 1096, 1102 (1993) ("Consent decrees, which are utilized to effectuate settlement, are considered contracts between the parties to litigation, and accordingly the law of contracts controls their interpretation."); *cf. United States v. City of Northlake,* 942 F.2d 1164, 1167 (7th Cir.1991) ("A judicially approved consent decree, like a settlement agreement, is essentially a contract for purposes of construction.... [F]undamental principles of contract interpretation under relevant state law apply when a court is presented with the task of interpreting the provisions of a consent decree." (citations omitted)).

accept. The first paragraph of this section, paragraph A, notes that J.C.C. withdraws its right to contest the Notice of Contract Breach, the Notice of Violations, the Notice of Contract Termination, the Notice of Fine Assessment and the Demand for Reimbursement. Subsequent paragraphs provide that J.C.C. will be barred permanently from the WIC program and that the State will waive the imposition of the fine and the demand for reimbursement. There is an integration clause that states that the consent agreement is the entirety of the agreement between the parties.

As a matter of contract interpretation, we believe that this consent agreement can only be understood as an acknowledgment of liability by J.C.C. Paragraph A expressly states that J.C.C. is waiving its right to contest the Notice of Violations. That notice, incorporated by reference in the consent agreement, contains the specific allegations that J.C.C. sold food to WIC customers at a price higher than the posted shelf price, charged the WIC program for food not received by the WIC customer and refused to allow WIC customers to take all food items listed on the WIC instrument. Consequently, the USDA properly determined that the consent agreement acknowledged liability for a violation of an enumerated WIC regulation and withdrew J.C.C.'s authorization for the Food Stamp program.

Finally, we cannot accept J.C.C.'s claim that it has been denied its right to due process of law because the USDA did not give it a hearing regarding the violations for which J.C.C. admitted liability in the consent agreement. This court already has addressed the due process concern raised here by J.C.C. In *East Food & Liquor, Inc. v. United States,* 50 F.3d 1405, 1412 (7th Cir. 1995), the court noted that, when the termination from the Food Stamp program is based upon a termination from the Illinois WIC program, the participant has an opportunity to contest the truth of the charged misbehavior in the hearing afforded by the State. As the government points out and as we have concluded in the foregoing discussion, there was no need for a hearing in this instance because, in the consent agreement, J.C.C., expressly withdrawing its request for a hearing, admitted the underlying conduct. Therefore, in the subsequent proceedings before the USDA, the only necessary inquiry was whether the admitted conduct constituted, under the federal regulation, sufficient ground for termination from the Food Stamp program.

### Conclusion

Because the consent agreement between J.C.C. and IDPH contained an admission on the part of J.C.C. that it had engaged in activity that mandates the termination of participation in the Food Stamp program, the district court properly granted summary judgment to the United States. Accordingly, its judgment is affirmed.

AFFIRMED.