SECOND DIVISION

FEBRUARY 2, 1999

1-98-1277

MATTHEW A. HURD, ) APPEAL FROM THE

) CIRCUIT COURT OF

Plaintiff-Appellant, ) COOK COUNTY

)

v. ) No. 97-L-9998

)

WILDMAN, HARROLD, ALLEN AND DIXON ) THE HONORABLE

) LORETTA DOUGLAS,

Defendant-Appellee. ) JUDGE PRESIDING

JUSTICE COUSINS delivered the opinion of the court:

On August 21, 1997, plaintiff, Matthew A. Hurd, filed his complaint at law alleging breach of contract and breach of fiduciary duty by defendant, Wildman, Harrold, Allen & Dixon.  On October 27, 1997, defendant filed its motion to dismiss plaintiff's complaint, with prejudice, pursuant to sections 2-

615, 2-619(a)(6) and 2-619(a)(9) of the Illinois Code of Civil Procedure (735 ILCS 5/2-615, 2-619(a)(6), (a)(9) (West 1996)) (Code).  Following hearings on the motion, the trial court found that plaintiff was not an "employee" pursuant to the Illinois Wage Payment and Collection Act (820 ILCS 115/1 
et seq.
 (West 1996)) (Act).  On March 18, 1998, plaintiff filed a motion to reconsider.  Thereafter, on April 6, 1998, the court granted defendant's motion to dismiss, with prejudice, pursuant to sections 2-619 (a)(6) and 2-619(a)(9) of the Code (735 ILCS 5/2-

619(a)(6), (a)(9) (West 1996)), and denied plaintiff's motion to reconsider.  On appeal, plaintiff contends that the trial court erred in dismissing his complaint in that:  (1) plaintiff was an "employee" as defined by the Act, thereby entitling him to separation benefits under the partnership agreement; (2) the release was executed under duress and was, therefore, unenforceable; (3) there was no additional consideration to support the general release and separation agreement between the parties; and (4) the court failed to consider the breach of fiduciary duties by defendant.

BACKGROUND

Plaintiff is an attorney licensed to practice law in the State of Illinois.  Following graduation from law school in 1985, plaintiff became employed at the law firm of Wildman, Harrold, Allen & Dixon (the firm), a general partnership governed by a written partnership agreement and engaged in the general practice of law.  Thereafter, in 1992, plaintiff became a nonequity partner of the firm in its Chicago office.

On or about November 3, 1994, after returning from his honeymoon, plaintiff, without consulting independent counsel, signed a general release and separation agreement (release) drafted by John Eisel, a partner and chairman of the management committee.  The release provided, in pertinent part:

"13.  In consideration of the Firm's promises under this Separation Agreement, [plaintiff], individually, and for your successors, assigns, heirs, and agents, and each and all of them, hereby unconditionally and forever release, acquit, and discharge the Firm, its partners, employees, agents, and attorneys from any and all claims, demands, liabilities, and causes of action of every kind, nature and description whatsoever which arise out of its/his/her/their conduct of the practice of law or the business of the Firm, whether known or unknown, or suspected to exist, which [plaintiff] ever had or may now have against the Firm, or any of the released causes of action arising from your partnership in the Firm, the Partnership Agreement, or any federal, state, or local laws or regulations, including but not limited to the Age Discrimination in Employment Act and law pertaining to breach of contract or wrongful discharge."

On August 21, 1997, almost three years following plaintiff's execution of the release, plaintiff filed his complaint at law.  Count I alleged that the firm breached article VII.Q. of the partnership agreement, regarding involuntary withdrawal or death of partners, and sought $270,000 in separation benefits.  Article VII. Q provided:

"If a partner's separation results from his or her involuntary withdrawal or death, the firm shall pay to the separated partner *** a sum equal to twice his or her Base Amount.  Payment shall be made in one hundred twenty (120) equal monthly installments, commencing on the last day of the month in which separation occurred."

Count II of plaintiff's complaint contended that the firm breached its fiduciary duties to him by participating in numerous activities, including an unlawful withholding of plaintiff's last paycheck, "until such time that [plaintiff] was coerced into signing a purported release document in violation of the Wage Payment and Collection Act, 820 ILCS 115/9."

On October 28, 1997, the firm filed its motion to dismiss plaintiff's complaint at law, with prejudice, pursuant to sections 2-615, 2-619(a)(6) and 2-619(a)(9) of the Code (735 ILCS 5/2-615, 2-619(a)(6), (a)(9) (West 1996)).  The firm contended that article II.G. of the firm's partnership agreement demonstrated that plaintiff was not entitled to separation payments.  The firm further contended:  (1) plaintiff's separation agreement contained a release that clearly and unambiguously released the claims brought by plaintiff in counts I and II of his complaint; (2) plaintiff failed to plead facts sufficient to allege fraud, illegality or self-dealing to support a claim for breach of fiduciary duty; and (3) there were insufficient facts alleged to justify a request for punitive damages.

On December 1, 1997, plaintiff filed his response to defendant's motion to dismiss accompanied by his affidavit attesting to the allegations contained in the complaint.  On December 15, 1997, the firm filed its reply in support of its motion to dismiss.

On February 20, 1998, after hearing argument, the trial court allowed plaintiff the opportunity to file an amended affidavit setting forth facts that would satisfy his burden of showing economic duress by clear and convincing evidence in order to invalidate the release.  The court further found that plaintiff was "not an employee pursuant to the Wage Payment and Collection Act, 820 ILCS 11/1 
et seq.
 and that Plaintiff's defense to the release based on this Act is stricken."  

On March 13, 1998, plaintiff filed his amended affidavit.  On March 18, 1998, plaintiff filed his motion to reconsider the portion of the February 20, 1998, order finding that plaintiff was not an "employee" pursuant to the Act.

On April 6, 1998, the trial court granted defendant's motion to dismiss pursuant to sections 2-619(a)(6) and 2-619(a)(9) of the Code (735 ILCS 5/2-619(a)(6), (a)(9) (West 1996)) and dismissed the case with prejudice.  The trial court further denied plaintiff's motion to reconsider.  Plaintiff appeals.

We affirm.

OPINION

I

At the outset, we note that a release such as the one involved in the case at bar is the abandonment of a claim to the person against whom the claim exists and is a contract to be construed under traditional contract law.  
Simmons v. Blauw
, 263 Ill. App. 3d 829, 832, 635 N.E.2d 601, 603 (1994).  The intentions of the parties to the contract must be determined from the instrument itself.  
Farm Credit Bank v. Whitlock
, 144 Ill. 2d 440, 447, 581 N.E.2d 664, 667 (1991).  Where no ambiguity exists, construction of the instrument is a matter of law.  
Gavery v. McMahon & Elliott
, 283 Ill. App. 3d 484, 487, 670 N.E.2d 822, 824 (1996).  

We believe the release in this case is clear and unambiguous.  Similarly, other courts have found that comparable language was clear and unambiguous where the releases recited that all claims known and unknown were barred.  See 
Constant v. Continental Telephone Co. of Illinois
, 745 F. Supp. 1345, 1380 (C.D. Ill. 1990); 
Lohman v. Morris
, 146 Ill. App. 3d 457, 461, 497 N.E.2d 143, 146 (1986); 
Pilon v. University of Minnesota
, 710 F.2d 466, 467 (8th Cir. 1983).  As such, where a written agreement is clear and explicit, a court must enforce the agreement as written without the assistance of parol evidence or any extrinsic aids.  
Rakowski v. Lucente
, 104 Ill. 2d 317, 323, 472 N.E.2d 791, 794 (1984).  Once the defendant establishes the existence of a release, legal and binding on its face, the burden shifts to the plaintiff to prove it invalid by clear and convincing evidence.  
McComb v. Seestadt
, 93 Ill. App. 3d 705, 706, 417 N.E.2d 705, 707 (1981).

Plaintiff contends that the trial court erred in dismissing his complaint and finding that plaintiff was not an "employee" within the meaning of the Illinois Wage Payment and Collection Act (820 ILCS 115/1 
et seq.
 (West 1996)).  Section 9 of the Act provides:

"In a case of a dispute over wages, the employer shall pay, without condition and within the time set by this Act, all wages or parts thereof, conceded by him to be due, leaving to the employee all remedies to which he may otherwise be entitled as to any balance claimed.  The acceptance by an employee of a disputed paycheck shall not constitute a release as to the balance of his claim and any release or restrictive endorsement required by an employer as a condition to payment shall be a violation of this Act and shall be void."  820 ILCS 115/9 (West 1996).

Plaintiff argues that, based on the language of the Act, the aforementioned release is void as a matter of law and is therefore unenforceable.  The firm, however, contends that the Act is inapplicable to plaintiff as a partner in a partnership.

In our view, plaintiff's reliance on the Act is misplaced.  Plaintiff insists that the separation benefits he asserts he is entitled to are wages, as any compensation can be considered wages, and, as such, any releases entered into between him and the firm are void pursuant to the Act.  However, article II.G. of the partnership agreement renders him ineligible to receive separation benefits, even absent the release, as the agreement states that a "non-equity partner will be treated the same as an equity partner for all tax and benefit purposes 
except Separation Benefits under this agreement
." (Emphasis added.)

Notwithstanding the language of the agreement, plaintiff relies on 
Simpson v. Ernst & Young
, 100 F.3d 436 (6th Cir. 1996), to support his position that a partner should be delineated an employee under the Act.  In 
Simpson
, the Sixth Circuit Court of Appeals held that a partner of a major accounting firm would be considered an employee for purposes of the Age Discrimination in Employment Act (29 U.S.C. §621 
et seq.
 (1994)), the Employment Retirement Income Security Act (29 U.S.C. §1001 
et seq.
 (1994)), and Ohio state law (
Simpson
, 100 F.3d at 443).  In rejecting the accounting firm's argument that the plaintiff was a partner, the court stated that it based its determination of Simpson's employment status on the particular circumstances of that case.  
Simpson
, 100 F.3d at 443.  It further noted that, "in so doing, we focus not on any label, but on the actual role played by the claimant in the operations of the involved entity and the extent to which that role dealt with traditional concepts of management, control and ownership."  
Simpson
, 100 F.3d at 443; see also 
Serapion v. Martinez
, 119 F.3d 982, 986-87 (1st Cir. 1997) ("A court must peer beneath the label and probe the actual circumstances of the person's relationship with the partnership").

In the case 
sub judice
, plaintiff did not specify either what his actual role was within the firm or the extent to which that role dealt with traditional concepts of management, control, and ownership.  See 
Simpson
, 100 F.3d at 443.  Rather, throughout his complaint, plaintiff simply alleged that he was "partner" of the firm and that his partnership was governed by a partnership agreement.  He sought recovery on claims available only to equity partners within the firm and alleged only that the firm unlawfully withheld his paycheck and required him to execute the release before receiving his pay as a subparagraph within his allegation that the firm breached its fiduciary duties toward him.  It was only after the firm moved to dismiss based upon the unambiguous language of the release executed by the parties that plaintiff presented argument that he was an employee under the provisions of the Act.  However, no reference to the term "employee" is found anywhere in the complaint.  Moreover, no attestation is found within plaintiff's affidavit that would lead this court to conclude that plaintiff was an employee entitled to benefits under the Act.  

Plaintiff urges this court to find that he is not required to plead such facts in order to preserve a finding in his favor.  However, both cases cited in support of plaintiff's argument contain plaintiffs who did, in fact, plead that they were employees entitled to benefits under the specific federal statutes.  See 
Simpson
, 100 F.3d at 439; 
Serapion
, 119 F.3d at 984-85.  In the federal arena, those plaintiffs were required to so plead in order to state a cause of action in federal court.  We agree that the same holds true under the Act in the case 
sub judice
.

Accordingly, in our view, the trial court was not provided enough information concerning plaintiff's role as a partner at the firm to find that he was not an employee within the meaning of the Act.  However, because plaintiff failed to plead any facts regarding the Act's applicability, either directly or in the alternative, he has no remedy under the Act and, as such, plaintiff's complaint was properly dismissed.

II

As previously discussed, the release in this case is clear and unambiguous.  However, a release is only effective if plaintiff's consent to the agreement was knowing and voluntary.  
Constant
, 745 F. Supp. at 1379.  It may be voided where its execution was obtained through fraud, duress, illegality or mistake.  
Simmons
, 263 Ill. App. 3d at 832, 635 N.E.2d at 603.  As such, plaintiff contends that the release in question was executed under duress and was, therefore, unenforceable as a matter of law.

Economic duress is a condition where one is induced by a wrongful act or threat of another to make a contract under circumstances that deprive one of the exercise of one's own free will.  
De Fontaine v. Passalino
, 222 Ill. App. 3d 1018, 1029, 584 N.E.2d 933, 940 (1991); 
Kaplan v. Kaplan
, 25 Ill. 2d 181, 185, 182 N.E.2d 706, 709 (1962).  To establish duress, one must demonstrate that the threat has left the individual " 'bereft of the quality of mind essential to the making of a contract.' "  
Alexander v. Standard Oil Co.
, 97 Ill. App. 3d 809, 815, 423 N.E.2d 578, 582 (1981), quoting 
Kaplan
, 25 Ill. 2d at 186, 182 N.E.2d at 709.  The acts or threats complained of must be wrongful; however, the term "wrongful" is not limited to acts that are criminal, tortious, or in violation of a contractual duty.  They must extend to acts that are wrongful in a moral sense as well.  
Kaplan
, 25 Ill. 2d at 186, 182 N.E.2d at 709.  In terms of "economic duress," also known as "business compulsion," the defense cannot be predicated upon a demand that is lawful or upon doing or threatening to do that which a party has a legal right to do.  
Alexander
, 97 Ill. App. 3d at 815, 423 N.E.2d at 582. Furthermore, it has been long held that where consent to an agreement is secured merely because of hard bargaining positions or financial pressures, duress does not exist.  
Wallenius v. Sison
, 243 Ill. App. 3d 495, 503, 611 N.E.2d 1096, 1101 (1993); 
Chouinard v. Chouinard
, 568 F.2d 430, 434 (5th Cir. 1978).  A party must demonstrate inducement by a wrongful act or threat of another to execute an agreement under circumstances depriving him of the exercise of free will in order to invalidate an agreement on the basis of duress.  
Willcutts v. Galesbury Clinic Ass'n
, 201 Ill. App. 3d 847, 852-53, 560 N.E.2d 1, 4 (1990).  Unless wrongful or unlawful pressure is applied, there is no business compulsion or economic duress.  
De Fontaine
, 222 Ill. App. 3d at 1029, 584 N.E.2d at 941.  "Rather, the conduct of the party obtaining the advantage must be shown to be tainted with some degree of fraud or wrongdoing in order to have an agreement invalidated on the basis of duress."  
Alexander
, 97 Ill. App. 3d at 215, 423 N.E.2d at 583.

In the present case, plaintiff contends that his execution of the release was done under economic duress as the firm "deliberately withheld his direct deposit of his draw until such time that [plaintiff] execute[d] the Agreement."  Plaintiff's affidavit filed in support of his response to the firm's motion to dismiss more specifically indicated that plaintiff feared that a number of checks he had written prior to November 3, 1994, would bounce, that he would be evicted from his apartment, and that he was depending upon his fellow partners for references that he feared he would not receive.  However, these allegations do not establish that plaintiff lacked the quality of mind essential to executing the release.  Accordingly, plaintiff's subjective fears, in our view, do not amount to economic duress.  See 
Resolution Trust Corp. v. Ruggerio
, 977 F.2d 309 (7th Cir. 1992).  Additionally, although the plaintiff directs this court to numerous federal circuit court cases that propound a seven-

point inquiry into whether a release has been a knowing and voluntary execution, we believe those cases are inapposite to the issue, as plaintiff has failed to show clear and convincing evidence that the release was entered into because of duress.  See 
Wallenius
, 243 Ill. App. 3d at 503, 611 N.E.2d at 1101.

III

Plaintiff next contends that the trial court erred in dismissing his complaint as there was no additional consideration to support the release between the parties on November 3, 1994.  The release called for plaintiff to vacate his office on or before November 15, 1994, and further stated that the firm would:  provide plaintiff voice mail and secretarial services through December 31, 1994; pay plaintiff's regular "draw" in the same installments as had been previously in effect through December 31, 1994, regardless of whether plaintiff had begun practicing law at another firm prior to that date; pay plaintiff a tax "draw" on January 13, 1995, in the amount of $8,125; offer plaintiff the opportunity to purchase his office furnishings at book value for the sum of $8,257; and allow plaintiff to remain on the firm's life, health, and disability insurance programs until December 31, 1994.  Despite this explicit language, plaintiff contends that there was no additional consideration because the firm was legally and ethically required to provide him the above under the preexisting duty rule.  See 
Alexander
, 97 Ill. App. 3d at 815, 423 N.E.2d at 582.  

This court has held that "[a] release must be based upon consideration which consists either of some right, interest, profit or benefit accruing to one party, or some forbearance, detriment, loss of responsibility given, suffered or undertaken by another."  
Gavery
, 283 Ill. App. 3d at 489, 670 N.E.2d at 826; see also 
White v. Village of Homewood
, 256 Ill. App. 3d 354, 356, 628 N.E.2d 616, 618 (1993).  Any act or promise that is a benefit to one party or a detriment to the other is a sufficient consideration to support a contract.  
De Fontaine
, 222 Ill. App. 3d at 1028, 584 N.E.2d at 939.  The record indicates, however, that consideration was bestowed upon plaintiff.  

This court has further noted:

"A court's inquiry into whether a contract is supported by consideration does not extend to examining the adequacy of the consideration.  
Goodwine State Bank v. Mullins
, 253 Ill. App. 3d 980, 1011, 625 N.E.2d 1056 (1993).  It is not [the] court's function to review the amount of consideration unless the amount is so grossly inadequate as to shock the conscience of the court.  
Bonner v. Westbound Records, Inc.
, 76 Ill. App. 3d 736, 743, 394 N.E.2d 1303 (1979).  Mere inadequacy of consideration, in the absence of fraud or unconscionable advantage, ordinarily is insufficient to justify setting aside a contract.  
Mullins
, 253 Ill. App. 3d at 1011."  
Gavery
, 283 Ill. App. 3d at 490-91, 670 N.E.2d at 827.

As such, notwithstanding any legal or ethical considerations the firm had to plaintiff, plaintiff agreed to "unconditionally and forever release, acquit, and discharge the Firm, *** from 
any and all
 claims, demands, liabilities and causes of action."  (Emphasis added.)  Although a promise to do something one is already obligated to do is no consideration and creates no new obligation (
De Fontaine
, 222 Ill. App. 3d at 1028, 584 N.E.2d at 939), by signing the release, plaintiff obligated himself to never file suit against the firm in exchange for thousands of dollars in benefits he was not entitled to.  In our view, this was adequate consideration.

Moreover, even assuming 
arguendo
 that the release was unenforceable, we believe that plaintiff ratified the agreement by his subsequent conduct.  It has been held:

"A party cannot be permitted to retain the benefits received under a contract and at the same time escape the obligations imposed by the contract.  If a releasor, therefore, retains the consideration after learning that the release is voidable, her continued retention of the benefits constitutes a ratification of the release."  
Seward v. B.O.C. Division of General Motors Corp.
, 805 F. Supp. 623, 632 (N.D. Ill. 1992).

Further, " '[i]t is well established that the retention of the consideration by one sui juris, with knowledge of the facts will amount to a ratification of a release executed by him in settlement of a claim, where the retention is for an unreasonable time under the circumstances of the case.' "  
Golden v. McDermott Will & Emery
, 299 Ill. App. 3d 982, 993, 702 N.E.2d 581, 589 (1998), quoting 66 Am. Jur. 2d 
Release
 §27 (1973).  As such, "[a] victim of fraud who, knowing of the fraud, 'accepts the benefits flowing from a contract for any considerable length of time ratifies the contract.' "  
Golden
, 299 Ill. App. 3d at 993, 702 N.E.2d at 589; see also 
Seward
, 805 F. Supp. at 632.

Here, following the execution of the release, plaintiff was compensated until December 31, 1994, although he was to vacate his office on November 15, 1994.  He received a tax "draw" on January 13, 1995, in the amount of $8,125, was offered the opportunity to purchase his office furnishings at book value, and was allowed to remain on the firm's life, health, and disability insurance programs until December 31, 1994.  After accepting this compensation, plaintiff waited close to three years to file suit.  As a result, plaintiff ratified the purportedly unenforceable release.  See 
Seward
, 805 F. Supp. at 632.

IV

Plaintiff finally contends that the trial court failed to consider the breach of fiduciary duty count against the firm when it dismissed the complaint.  Plaintiff submits that the uncontested allegations in his complaint should have been submitted to the trier of fact for consideration.  We disagree.

A section 2-619 motion to dismiss admits the legal sufficiency of the complaint, but asserts an affirmative defense or other matter that avoids or defeats the claim.  
Duncan v. Church of the Living God
, 278 Ill. App. 3d 588, 594, 662 N.E.2d 1371, 1375 (1996).  Additionally, conclusions of law or fact unsupported by allegations of specific facts upon which the conclusions are based are not admitted.  
Sargent v. Illinois Institute of Technology
, 78 Ill. App. 3d 117, 120, 397 N.E.2d 443, 445 (1979).

Here, the release executed on November 3, 1994, and cited by the firm in its motion to dismiss, defeated plaintiff's claims pursuant to sections 2-619(a)(6) and 2-619(a)(9) of the Code (735 ILCS 5/2-619(a)(6), (a)(9) (West 1996)).  Plaintiff has the burden of establishing that the defense articulated in the firm's motion to dismiss is unfounded.  
Duncan
, 278 Ill. App. 2d at 594, 662 N.E.2d at 1375.  In our view, plaintiff has not met this burden; therefore, his contentions on appeal must fail.

Accordingly, the judgment of the circuit court is affirmed.

Affirmed.

RAKOWSKI and McNULTY, JJ., concur.