2022 IL App (1st) 211337
No. 1-21-1337
Opinion filed: December 9, 2022

SIXTH DIVISION

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| STEVEN RAY DAHLMAN, | ) | Appeal from the Circuit |
| | ) | Court of Cook County, |
| Plaintiff-Appellant, | ) | Illinois |
| | ) | |
| v. | ) | 2018-M1-124319 |
| | ) | |
| MICHAEL MICHALAK, | ) | The Honorable |
| | ) | Lorraine M. Murphy, |
| Defendant-Appellee. | ) | Judge Presiding. |

JUSTICE WALKER delivered the judgment of the court, with opinion.
Justices Oden Johnson and Tailor concurred in the judgment and opinion.

OPINION

¶ 1        Plaintiff Steven Dahlman sued defendant Michael Michalak for violating Chapter 5-12 of

the Chicago Municipal Code, titled Residential Landlord and Tenant Ordinance (Ordinance)

(Chicago Municipal Code § 5-12-010 (amended Mar. 31, 2004)). The circuit court dismissed

the complaint because Dahlman signed a release of his claims against Michalak. We find

Dahlman adequately alleged facts that could support a finding he signed a release under duress.

We reverse and remand for further proceedings on the complaint.

¶ 2                            I. BACKGROUND

¶ 3        Dahlman and his wife rented an apartment from Michalak in 2010. Michalak renewed the lease annually until July 2015, when he handed Dahlman a notice of intent not to renew the lease. Dahlman and Michalak signed a "Surrender and Release Agreement," under which Dahlman agreed to return the keys to Michalak and Michalak agreed to pay Dahlman $500. According to the release, Michalak would release all claims against Dahlman and Dahlman would

> "release, acquit, and forever discharge Landlord and Landlord's agents *** and assigns of and from any and all claims, actions, suits, agreements, causes of action, demands, damages, costs, loss of services, expenses and compensation, known or unknown, and covenants not to sue Landlord for any action or omission from the beginning of time to the date of this Agreement, including but not limited to those actions for any reason arising, surrounding, relating to, or occasioned upon the Lease or Tenant's Tenancy of the Leased Premises."

¶ 4        In July 2018 Dahlman sued Michalak, alleging that Michalak violated the Ordinance by refusing to renew the lease in 2015 in retaliation against Dahlman for publishing embarrassing news stories about the directors of the condominium association where Michalak owned the leased apartment. Michalak filed a motion to dismiss the complaint as barred by the release. Dahlman filed an amended complaint that was also dismissed, and Dahlman filed a second amended complaint in which he alleged:

"On July 10, 2015, Mr. Michalak angrily served in person a 60-day notice that he was not renewing my lease and threatened to come back and 'burn the place down.'

* * *

*** When I told Mr. Michalak that I would be filing a police report against him for the terroristic threat he made while serving the 60-day notice, Mr. Michalak contacted my wife and made her feel so threatened that she implored me not to contact the police for fear of further retribution from Mr. Michalak.

* * *

*** I feared further interference by the condo board president that would further enrage the Defendant. We needed to minimize as much as possible anything that would infuriate the Defendant and make our transition to a new home even more difficult.

* * *

*** We were afraid the Defendant would slander us to other rental properties and prospective landlords. I did not know if the Defendant or the condo board president had further retaliation in mind for us."

¶ 5    The circuit court granted Michalak's motion to dismiss the second amended complaint and denied Dahlman's motion to reconsider. Dahlman now appeals.

¶ 6                                    II. ANALYSIS

¶ 7    In his *pro se* brief on appeal, Dahlman argues that the circuit court relied on a misinterpretation of the Ordinance, duress makes the release unenforceable, and the circuit

court's decision disserves the public interest in honest journalism. The circuit court granted Michalak's motion to dismiss under section 2-619.1 of the Code of Civil Procedure. 735 ILCS 5/2-619.1 (West 2020). Because we review the dismissal *de novo*, we need not address the circuit court's reasoning. See *Krilich v. American National Bank & Trust Co. of Chicago*, 334 Ill. App. 3d 563, 573-74 (2002). We decide only "whether the existence of a genuine issue of material fact should have precluded the dismissal or, absent such an issue of fact, whether dismissal is proper as a matter of law." *Kedzie & 103rd Currency Exchange, Inc. v. Hodge*, 156 Ill. 2d 112, 116-17 (1993).

¶ 8        The release appears on its face sufficient to defeat Dahlman's cause of action. See *Hurd v. Wildman, Harrold, Allen & Dixon*, 303 Ill. App. 3d 84, 89 (1999). Dahlman argues the allegations of his second amended complaint could support a finding that duress renders the release unenforceable. The Restatement of Contracts defines duress to include:

> "(a) any wrongful act of one person that compels a manifestation of apparent assent by another to a transaction without his volition, or

> (b) any wrongful threat of one person by words or other conduct that induces another to enter into a transaction under the influence of such fear as precludes him from exercising free will and judgment, if the threat was intended or should reasonably have been expected to operate as an inducement." Restatement of Contracts § 492 (1932)

See *Regenold v. Baby Fold, Inc.*, 68 Ill. 2d 419, 433 (1977) (adopting the Restatement definition of duress as Illinois law).

"Duress occurs where one is induced by a wrongful act or threat of another to make a contract under circumstances that deprive one of the exercise of one's own free will. *** The acts or threats complained of must be wrongful; however, the term 'wrongful' is not limited to acts that are criminal, tortious, or in violation of a contractual duty. They must extend to acts that are also wrongful in a moral sense. [Citation.]

It is well settled that, where consent to an agreement is secured merely through hard bargaining positions or financial pressures, economic duress does not exist. [Citation.] Rather, the conduct of the party obtaining the advantage must be shown to be tainted with some degree of fraud or wrongdoing in order to have an agreement invalidated on the basis of duress." (Internal quotation marks omitted.) *Krilich*, 334 Ill. App. 3d at 572.

¶ 9        Dahlman alleged Michalak threatened to "burn the place down." Michalak's unlimited access to Dahlman's home made the threat more credible. The allegation of a specific wrongful threat to destroy Dahlman's home creates an issue of fact concerning whether duress voids the release.

¶ 10        Dahlman also alleged that he signed the release because he and his wife feared Michalak could effectively prevent them from finding housing. We find persuasive the following discussion of economic duress:

"[M]odern caselaw has dramatically transformed the doctrine of economic duress. This is because courts *** have developed an increasing recognition of the law's

role in correcting inequitable or unequal exchanges between parties of disproportionate bargaining power and a greater willingness to not enforce agreements which were entered into under coercive circumstances. [Citation.]

Today, economic duress no longer requires some unlawful act in the nature of a tort or a crime to trigger. [Citation.] Instead, the doctrine [of economic duress] *** may come into play upon the doing of a wrongful act which is sufficiently coercive to cause a reasonably prudent person faced with no reasonable alternative to succumb to the perpetrator's pressure. [Citation.] Whether the party asserting economic duress had a reasonable alternative is determined by examining whether a reasonably prudent person would follow the alternative course, or whether a reasonably prudent person might submit. [Citation.] A reasonably prudent person may have no reasonable alternative but to succumb when the only other alternative is bankruptcy or financial ruin." (Internal quotation marks omitted.) *In re Outlaw Laboratories, LP Litigation*, 352 F. Supp. 3d 992, 1007-08 (S.D. Cal. 2018).

¶ 11    A reasonably prudent person may also have no suitable alternative when faced with a real threat of homelessness. We find Dahlman's fear that Michalak could persuade other landlords not to rent an apartment to him and his wife may also amount to duress that voids the release. Dahlman has alleged sufficient facts to overcome the motion to dismiss based on the release.

¶ 12    Michalak argues this court should affirm the dismissal of the second amended complaint because tenants have no cause of action for violations of the Ordinance. The Ordinance provides:

6

"It is declared to be against public policy of the City of Chicago for a landlord to take retaliatory action against a tenant, except for violation of a rental agreement or violation of a law or ordinance. A landlord may not knowingly *** refuse to renew a lease or tenancy because the tenant has in good faith[ ]

\* \* \*

*** [e]xercised any right or remedy provided by law.

If the landlord acts in violation of this section, the tenant has a defense in any retaliatory action against him for possession and is entitled to the following remedies: he shall recover possession or terminate the rental agreement and, in either case, recover an amount equal to and not more than two months' rent or twice the damages sustained by him, whichever is greater, and reasonable attorneys' fees." Chicago Municipal Code § 5-12-150 (amended Nov. 6, 1991).

¶ 13    Dahlman alleged that Michalak refused to renew the lease because Dahlman exercised his constitutional right to free speech and his free press "right to report on any issues of concern and interest to the public."

¶ 14    Michalak contends the Ordinance limits relief to cases in which the landlord filed a complaint against the tenant for possession. He claims the tenant has a right to the remedies listed in the Ordinance only as part of the tenant's defense to a lawsuit for possession. However, the Ordinance says, "the tenant has a defense *** and is entitled to the following remedies." Chicago Municipal Code § 5-12-150 (amended Nov. 6, 1991). "The word 'and' joins the *** clause[s] ***, indicating the latter is to be added to or taken along with the first." *Tarsitano v.*

7

*Board of Education of Township High School District 211*, 385 Ill. App. 3d 868, 873 (2008). By using "and," the Ordinance provides the tenant has both a defense to an action for possession and entitlement to " 'an amount equal to and not more than two months' rent or twice the damages sustained by him, whichever is greater, and reasonable attorneys' fees.' " See *Sternic v. Hunter Properties, Inc.*, 344 Ill. App. 3d 915, 917 (2003). We hold that Michalak's misreading of the Ordinance cannot justify dismissal of the complaint.

¶ 15                                    III. CONCLUSION

¶ 16        Dahlman sufficiently alleged that Michalak violated the Ordinance by refusing to renew the lease in retaliation for Dahlman's criticism of building management in exercise of Dahlman's right to free speech and free press. Dahlman also sufficiently alleged that he signed the release under duress that voids the release. The Ordinance allows tenants a cause of action against landlords for violation of the Ordinance like the violation Dahlman alleged here. Accordingly, we reverse the dismissal of the complaint and remand for further proceedings.

¶ 17        Reversed and remanded.

No. 1-21-1337

---

### *Dahlman v. Michalak,* 2022 IL App (1st) 211337

---

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 18-M1-124319; the Hon. Lorraine Mary Murphy, Judge, presiding. |

---

| | |
|---|---|
| **Attorneys for Appellant:** | Steven Ray Dahlman, of Chicago, appellant *pro se*. |

---

| | |
|---|---|
| **Attorneys for Appellee:** | Jenette R. Fritzshall and Brad J. Pawlowski, of Fritzshall & Pawlowski, of Chicago, for appellee. |

---